# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Josue E. Colon, : 
                Petitioner : 
                 : 
        v. : No. 10 C.D. 2017
                 : Submitted: March 8, 2018
Unemployment Compensation : 
Board of Review, : 
                Respondent : 

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
             HONORABLE ANNE E. COVEY, Judge
             HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**           **FILED: April 2, 2018**

Josue E. Colon (Claimant), represented by counsel, petitions for review from an order of the Unemployment Compensation Board of Review (Board) denying him unemployment compensation (UC) benefits under Section 402(e) of the UC Law (Law)[1] (relating to willful misconduct). Claimant argues the Board erred in concluding his conduct in keeping cut produce a day past its discard date violated a work rule when posted discard dates merely represented a best practice. He contends Wegmans Food Markets (Employer) did not enforce the discard dates uniformly, and his conduct was consistent with the practice of other employees, including his supervisor, who routinely extended the discard dates on cut vegetables. He also asserts the referee erred in excluding testimony that other employees, including his supervisor, told him it was permissible to extend discard dates. Discerning no error below, we affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. §802(e).

# I. Background

Since 2001, Claimant worked for Employer, most recently as a Team Leader Cook in the Sushi Department. When Employer conducted an internal audit, it discovered the Sushi Department used cut vegetables beyond the discard date set forth on the shelf life matrix (Shelf Life Matrix) posted in kitchen areas. In July 2016, Employer discharged Claimant because he admittedly did not discard cut vegetables in accordance with the Shelf Life Matrix. Claimant applied for UC benefits, which the local service center denied. Claimant appealed.

A referee held a hearing where Claimant was represented by counsel, and Employer was represented by a tax consultant. Claimant testified on his own behalf. Employer presented the testimony of Michele McGeary (Employee Representative) and Perishable Manager William McElwee (Manager).

Employee Representative testified about Employer's food safety policies and procedures. She explained the Shelf Life Matrix sets the dates for storage and discard of the products, and "falls under the food safety policy under the good retailing best practices." Referee's Hr'g, 9/13/16, Notes of Testimony (N.T.) at 11. A violation of food safety procedures is grounds for termination.

Employee Representative also attended the meeting with Claimant where Employer revealed its audit findings. During the meeting, Claimant admitted it was a violation of food safety policies to extend the shelf life of produce. N.T. at 5. However, at the same time Claimant insisted, "it's always been that way" regarding extending discard dates on cut vegetables. N.T. at 10.

Manager was involved in the investigation and meeting that led to Claimant's discharge when Claimant's supervisor was unavailable. He confirmed the auditor found noncompliance with the Shelf Life Matrix in the Sushi Department. Manager explained the Shelf Life Matrix "existed as a resource for departments for several years now." N.T. at 13. He emphasized that, as Team Leader, Claimant was "in charge of making sure all the best practices [were] being followed." Id.

During the investigation, Claimant did not advise Employer that he was instructed to extend the shelf life by any supervisor. During his second meeting with Manager, Claimant admitted he knew extending the dates was wrong under the food safety guidelines. N.T. at 17. Manager acknowledged that Employer warned other employees accused of the same offense. N.T. at 18.

Claimant testified he was aware of the Shelf Life Matrix, but he did not think it was a requirement. Based on the course of conduct he observed in the kitchens, Claimant believed that when a product was still usable, he had the discretion to keep it for an extra day. He testified his supervisor (the sous chef) allowed him to extend the discard date on vegetables, so he considered the Shelf Life Matrix a guideline. Claimant also instructed employees who reported to him as Team Leader that they could extend the shelf life of vegetables by one day.

When Claimant attempted to testify as to what other employees told him about the Shelf Life Matrix, Employer's representative raised a hearsay objection; the referee sustained it. Claimant's counsel argued the testimony was not offered for the truth of the matter asserted, but for Claimant's "state of mind … [which]

3

becomes relevant because it's whether this is a rule or a best practice or policy or procedure." N.T. at 22. In his offer of proof, Claimant testified that based on what other employees told him, he thought it "was okay" to extend discard dates. Id.

Claimant admitted the Shelf Life Matrix was posted in his department, and Employer adopted it as a procedure. N.T. at 23. He also conceded during the meeting preceding his discharge that extending the discard date was "the wrong practice and I did wrong." N.T. at 25.

The referee admitted the Shelf Life Matrix as Employer's exhibit. Entitled "Sushi Shelf Life," it states: "Respect the Date - Food Integrity. No products are to be sold beyond their expiration date regardless if hot or cold & packaged or unpackaged." Certified Record, Item No. 9 (Ex. E-1).

The referee determined Claimant was ineligible for UC benefits under Section 402(e) of the Law. She made the following pertinent findings:

> 2. [E]mployer's Policies and Work Rules call for disciplinary action for violations of the Food Safety Policy/procedures.
>
> 3. [C]laimant was aware of [E]mployer's Food Safety Policy/procedures and, as the team leader, responsible for ensuring compliance among his staff.
>
> 4. [E]mployer has a [Shelf Life Matrix] that calls for food items to be discarded after a certain number of days in order to ensure food safety for customers.
>
> 5. [C]laimant was aware of the Shelf Life [M]atrix that indicated that cut vegetables were to be discarded after four days (day of production[,] plus three days).

4

6. The bins containing the food items are labeled with the production and discard dates.

7. During an internal audit, [E]mployer became aware that food items in [the] sushi area were not discarded on the discard date and the discard date was extended past the original date.

8. On July 8, 2016, when questioned by [E]mployer about extending the discard dates, [C]laimant admitted that he extended the date on vegetables.

9. On July 12, 2016, during a follow-up interview, [C]laimant admitted that extending the dates was the wrong practice and that he did wrong.

10. On July 12, 2016, [E]mployer discharged [C]laimant for violating its Food Safety Policy/procedures.

Referee's Dec., 9/13/16, Findings of Fact (F.F.) Nos. 2-10. The referee concluded that Employer's "Food Safety Policy/procedures requir[e] that employees follow the Shelf Life [M]atrix that determines when a food item must be discarded to ensure food safety for customers." Id. at 2.

Ultimately, the Board determined Claimant was ineligible for UC benefits, adopting the referee's findings and conclusions. Bd. Op., 12/5/16, at 1. Claimant now petitions for review. After briefing, the matter is ready for disposition.

## II. Discussion

On appeal,[2] Claimant argues the Board erred in concluding the Shelf Life Matrix constituted a work rule. Because other employees did not follow the

---

[2] "Our review is limited to determining whether the necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated." Johns v. Unemployment Comp. Bd. of Review, 87 A.3d 1006, 1013 n.2 (Pa. Cmwlth. 2014).

5

Shelf Life Matrix, and his supervisor stated it was not required, Claimant contends he had good cause for his conduct. He also asserts his testimony about what other employees, including his supervisor, told him about the Shelf Life Matrix should have been admitted under the state of mind exception to the hearsay rule.

The Board responds that Employer established the Shelf Life Matrix was a rule. Because Claimant was aware of the Shelf Life Matrix, and decided not to follow it, he committed willful misconduct. The Board asserts Claimant did not establish good cause through uneven enforcement or an accepted past practice.

### A. Willful Misconduct

Pursuant to Section 402(e) of the Law, 43 P.S. §802(e), a claimant is ineligible for UC benefits when an employer discharges him for willful misconduct. Although the Law does not define "willful misconduct," appellate courts define it as: "(a) wanton or willful disregard for an employer's interests; (b) deliberate violation of an employer's rules; (c) disregard for standards of behavior which an employer can rightfully expect of an employee; or[,] (d) negligence indicating an intentional disregard of the employer's interest or an employee's duties or obligations." Grieb v. Unemployment Comp. Bd. of Review, 827 A.2d 422, 425 (Pa. 2003). The issue of whether a claimant's conduct constitutes willful misconduct is a question of law fully reviewable by this Court. Ductmate Indus., Inc. v. Unemployment Comp. Bd. of Review, 949 A.2d 338 (Pa. Cmwlth. 2008).

An employer bears the initial burden of showing a claimant committed willful misconduct. Id. An employer seeking to prove willful misconduct by a rule

6

violation must demonstrate the existence of the rule, its reasonableness, and its violation. Guthrie v. Unemployment Comp. Bd. of Review, 738 A.2d 518 (Pa. Cmwlth. 1999). "The employer must also show that the employee intentionally or deliberately violated the work rule." Chester Cmty. Charter Sch. v. Unemployment Comp. Bd. of Review, 138 A.3d 50, 54 (Pa. Cmwlth. 2016).

Once an employer proves a rule violation, the burden then shifts to the claimant to show good cause for the violation. Chapman v. Unemployment Comp. Bd. of Review, 20 A.3d 603 (Pa. Cmwlth. 2011). A claimant shows good cause by "demonstrating that uneven enforcement has rendered a policy unreasonable." Id. at 607.

**1. Rule Status**

There is no dispute that Claimant violated the Shelf Life Matrix. Claimant challenges the status of the Shelf Life Matrix as a rule when it actually represents a best practice offering guidance. He maintains its status as a rule was ambiguous given the common practice of extending discard dates in the kitchen, and when his supervisor and other employees told him the practice was "okay." N.T. at 22.

In support of his argument that the Shelf Life Matrix was not a rule, Claimant cites Employer's witnesses' references to it as a "best practice." Pet'r's Br. at 6. He also asserts that his testimony as to what other employees told him was improperly excluded as hearsay when it was offered to show his reason for believing extending discard dates was permitted, not for the truth of the matter asserted.

7

### a. Employer's Evidence

Employer's witnesses testified the Shelf Life Matrix was a part of Employer's food safety policies. N.T. at 11, 12. It was only in that context that they used the term "best practice." Id. Specifically, Manager testified Employer conducted an internal audit of departments to ensure that they were complying with food safety practices "as they apply to work rules." Id. at 12. Aside from an internal audit to assess compliance, Manager emphasized that Claimant, as Team Leader, was responsible for making sure his team followed food safety practices. N.T. at 13.

Claimant attended "various trainings regarding food safety and management of expiration dates." N.T. at 6. Manager testified the training includes review of the Shelf Life Matrix, and employees "[are] made aware that they are to follow the matrix …." N.T. at 14. Further, both of Employer's witnesses testified that during the meeting preceding his termination, Claimant admitted he violated the food safety policy and procedures. N.T. at 6, 17.

The Board is the ultimate fact-finder. Oyetayo v. Unemployment Comp. Bd. of Review, 110 A.3d 1117 (Pa. Cmwlth. 2015). The Board may credit any witness, in whole or in part. Id. We consider the testimony "in the light most favorable to the prevailing party, giving [it] the benefit of any inference that can logically and reasonably be drawn from the evidence." Johns v. Unemployment Comp. Bd. of Review, 87 A.3d 1006, 1013 (Pa. Cmwlth. 2014) (citation omitted).

Here, the Board credited Employer's witnesses' testimony, which constitutes substantial evidence to support its findings as to the status of the Shelf Life

8

Matrix. Examining their testimony in the light most favorable to Employer, Employer established the Shelf Life Matrix was a rule of which Claimant was aware.

### b. Hearsay Evidence

Claimant asserts that evidence as to what others told him was relevant to both whether he believed the Shelf Life Matrix was a rule, and the alleged willfulness of his conduct. As a result, he argues the referee's exclusion of this testimony constitutes grounds for a remand for another hearing to admit such evidence.

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted in the statement. Commonwealth v. Laich, 777 A.2d 1057 (Pa. 2001); see Pa.R.E. 801(c). While hearsay is generally not admissible, evidence as to a "declarant's then-existing state of mind (such as motive, intent or plan)" falls within an exception to the hearsay rule. Pa.R.E. 803(3). "[W]here a declarant's out-of-court statements demonstrate [his] state of mind, are made in a natural manner, and are material and relevant, they are admissible pursuant to the exception." Laich, 777 A.2d at 1060-61.

Evidence as to what other employees, including Claimant's supervisor, told Claimant about the Shelf Life Matrix was not hearsay. Claimant's counsel was clear that the purpose of the testimony was not to prove the truth of employees' statements that extending discard dates was acceptable, but rather to show the effect on Claimant's beliefs. N.T. at 22.

9

Regardless, assuming such statements constituted hearsay, they were admissible under the state of mind exception. Hooker v. State Farm Fire & Cas. Co., 880 A.2d 70 (Pa. Cmwlth. 2005). Based on what his supervisor told him, Claimant believed it was within his discretion to use cut vegetables one day past the discard date stated on the Shelf Life Matrix as long as "the product [was] still good." N.T. at 21.

However, the testimony has limited relevance as to whether the Shelf Life Matrix was a rule. To the extent the evidence was relevant to Claimant's beliefs, Claimant's admissions at the time of his discharge show that he recognized the Shelf Life Matrix as part of Employer's food safety policies. Therefore, the exclusion of Claimant's contradictory testimony that other employees told him extending discard dates "was okay" does not affect the result. N.T. at 22.

Additionally, Claimant's supervisor's alleged acquiescence in the practice of extending discard dates beyond those in the Shelf Life Matrix does not excuse Claimant's conduct. Temple Univ. v. Unemployment Comp. Bd. of Review, 772 A.2d 416 (Pa. 2001) (claimant's mistaken belief that supervisor may permit conduct is not good cause for engaging in such conduct). That a supervisor authorizes conduct does not show the employer necessarily accepts it.[3]

Because the testimony as to what other employees told Claimant is not relevant to the status of the Shelf Life Matrix as a rule, and is contradicted by

_____

[3] Factors for attributing a practice to an employer are addressed later in the past practice section of this opinion.

Claimant's admissions, a remand for a hearing that develops this testimony is not necessary.

## 2. Rule Violation

Claimant's remaining arguments that he did not deliberately violate a rule are equally unavailing. As analyzed above, the Shelf Life Matrix was a rule. Claimant conceded he was aware of the Shelf Life Matrix, and it was a procedure that Employer adopted. N.T. at 23. Claimant did not violate it by mistake. He made deliberate decisions to extend discard dates on vegetables based on his experience that "it's okay to use [vegetables] one more day." N.T. at 24. Claimant did not check with his supervisor before extending discard dates, so it was not done at his supervisor's direction. Id. He also instructed his team to extend discard dates.

Claimant's testimony that he observed other employees not following the discard dates also does not overcome evidence showing his deliberate violation. Because some of those employees report to Claimant, and follow his example, their failure to follow the Shelf Life Matrix does not show Employer condoned violations of the discard dates. Rather, it shows that Claimant condoned such violations.

Claimant also argues the Shelf Life Matrix is not a rule because nothing in writing states that if an employee does not comply with the Shelf Life Matrix, he is subject to discharge. However, "[i]t is not necessary that an employer's reasonable order or directive be written in order for the Court to determine that an employee's violation thereof constitutes willful misconduct …." Graham v. Unemployment Comp. Bd. of Review, 840 A.2d 1054, 1057 (Pa. Cmwlth. 2004).

11

Claimant's admissions show he recognized the Shelf Life Matrix was a procedure Employer expected to be followed. Yet, he did not follow it. Accordingly, we conclude Employer met its burden to prove Claimant violated a rule.

**B. Good Cause**

Next, we consider whether Claimant demonstrated good cause for his violation. Claimant asserts Employer did not enforce the Shelf Life Matrix consistently. He also argues that extending the discard date for vegetables by a day was consistent with Employer's actual practice.

Claimant bears the burden of proving lack of enforcement of the policy. Chapman. He may meet this burden by showing Employer allowed a practice that conflicts with the policy, id., or by showing the policy was not uniformly enforced. Beaver Falls v. Unemployment Comp. Bd. of Review, 441 A.2d 510 (Pa. Cmwlth. 1982).

**1. Uneven Enforcement**

Discharge may be an excessive penalty for a policy violation when the policy is not consistently enforced. See, e.g., Great Valley Publ'g v. Unemployment Comp. Bd. of Review, 136 A.3d 532 (Pa. Cmwlth. 2016) (affirming Board; employer failed to establish claimant's use of internet amounted to willful misconduct). Here, Claimant contends he should not have been discharged when other employees only received a warning for the same violation. In essence, he complains of disparate treatment.

12

However, "[t]o succeed on his defense, Claimant was required to establish that Employer treated similarly situated employees differently based upon improper criteria." Walsh v. Unemployment Comp. Bd. of Review, 943 A.2d 363, 370 (Pa. Cmwlth. 2008); Am. Racing Equip., Inc. v. Unemployment Comp. Bd. of Review, 601 A.2d 480 (Pa. Cmwlth. 1991). In American Racing, we found no disparate treatment occurred because the terminated employee was not similarly situated to the other employees who received lesser discipline. There, we reasoned that an employer may treat an employee differently based on his level of responsibility. Id. Because the claimant was a manager, and the other two employees who were not discharged for the same conduct were not managers, the employer had a proper basis for imposing different discipline.

Like the employee in American Racing, as Team Leader, Claimant was a supervisor to whom other employees reported. In that capacity, he had responsibility for enforcing the Shelf Life Matrix as well as following it. There is no indication that the other employees who were warned for violating the Shelf Life Matrix also worked as supervisors. Thus, Employer did not apply an improper criterion by discharging Claimant for failing to follow the Shelf Life Matrix.

This Court also rejects Claimant's contention that he was entitled to a warning based on his misconception that the Shelf Life Matrix was not binding. Claimant cites no legal support for this argument. Further, and to the contrary, the Law contains no prior warning requirement. Graham. Also, "a lack of prior warnings 'is not a defense in willful misconduct cases' regarding admitted misconduct."

13

Chapman, 20 A.3d at 610 (quoting Pettyjohn v. Unemployment Comp. Bd. of Review, 863 A.2d 162, 165 (Pa. Cmwlth. 2004)).

Claimant admittedly violated the Shelf Life Matrix. Because Claimant did not establish he was similarly situated to the employees who were warned, he did not show his conduct merited the same discipline, i.e., a warning instead of discharge.

## 2. Past Practice

Claimant also argues Employer accepted the practice of extending the discard date on cut vegetables one day beyond the Shelf Life Matrix. We disagree. Claimant's testimony that other employees routinely violated the Shelf Life Matrix does not establish a "past practice" so as to excuse his violation.

For an action to be considered a "past practice" in the employment context, "it must be a practice which is unequivocal, clearly enunciated and acted upon, readily ascertainable over a reasonable period of time as [a] fixed and established practice accepted by both employer and employees." Seton Co. v. Unemployment Comp. Bd. of Review, 663 A.2d 296, 299 (Pa. Cmwlth. 1995) (emphasis added). To establish an employer's acceptance of the past practice, evidence as to the employer's awareness and toleration of the practice is necessary. Compare Great Valley Publ'g (coworker's testimony that she was not reprimanded for violating policy and employer's admission that it tolerated violations sufficed to prove past practice), with Seton Co., 663 A.2d at 299 (substantial evidence did not support past practice when "there is no testimony whatsoever in the record that

14

management knew of or accepted the practice ....”), and Palmieri v. Unemployment Comp. Bd. of Review (Pa. Cmwlth., Nos. 2106, 2107 C.D. 2011, filed August 14, 2012), 2012 WL 8700470 (unreported) (claimant failed to establish past practice because director testified she had no knowledge of the practice).

Here, there is no evidence that Employer accepted violations of the Shelf Life Matrix. To the extent Employer was aware of violations, it did not condone them. To the contrary, other employees who violated the Shelf Life Matrix were disciplined in the form of a warning. N.T. at 18.

Because Claimant did not establish Employer accepted the practice in which he engaged, he failed to prove a past practice defense.

### III. Conclusion

Employer met its burden of proving the Shelf Life Matrix was a rule. Claimant admitted he was aware of the Shelf Life Matrix, and he violated the discard date for cut vegetables. He did not establish good cause for his actions. Accordingly, the Board's order is affirmed.

                                   _____

                                   ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Josue E. Colon,               :
                Petitioner    :
                              :
             v.               :    No. 10 C.D. 2017
                              :
Unemployment Compensation   :
Board of Review,            :
                Respondent

## **O R D E R**

**AND NOW**, this 2nd day of April, 2018, the order of the Unemployment Compensation Board of Review is hereby **AFFIRMED**.

 

_____
ROBERT SIMPSON, Judge