Penn Photomounts, Inc., Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued June 5, 1980, before Judges MENCER, CRAIG and MACPHAIL, sitting as a panel of three.

*Robert G. Bauer*, of counsel, *Abraham, Pressman, Tietz & Seidman*, for petitioner.

*John T. Kupchinsky*, Assistant Attorney General, with him *Richard Wagner*, Chief Counsel, and *Edward G. Biester, Jr.*, Attorney General, for respondent.

OPINION BY JUDGE MACPHAIL, August 11, 1980:

Penn Photomounts, Inc. (Employer) appeals from a decision of the Unemployment Compensation Board of Review (Board) awarding unemployment compensation benefits to Kathleen Johnston (Claimant). Claimant's last day of work for Employer was September 21, 1977 and her final rate of pay was $3.02 per hour. She was discharged by letter on October 3, 1977. The reason given in the letter for the discharge was "repeated unexcused absences." At the first hearing in this mat-

ter, Employer's supervisor explained that Claimant was discharged for "excessive unexcused absences, failure to notify us that she wasn't coming in."

Following her discharge, Claimant applied for unemployment compensation benefits. The Bureau (now Office) of Employment Security (Bureau) approved Claimant's application. Employer appealed. Following a hearing at which Claimant, unrepresented by counsel, and two representatives of Employer, represented by counsel, testified, the referee reversed the decision of the Bureau and denied benefits to Claimant. The basis of the denial was the referee's conclusion that Claimant's failure to give proper notice of her absences to Employer constituted willful misconduct thereby rendering her ineligible for unemployment compensation benefits pursuant to Section 402(e) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e). Claimant appealed the referee's decision to the Board. The Board remanded the case for a further hearing at which Claimant was represented by counsel. Following the second hearing, the Board entered an order reversing the decision of the referee and awarding benefits to Claimant. The sole issue before us is whether the Board erred in determining that Claimant's method of notifying Employer of her absences, although not in compliance with Employer's formal, written policy, did not constitute willful misconduct. For the reasons which follow, we affirm the order of the Board.

We have held repeatedly that the failure of an employee to report the reason for his or her absences from work in a proper manner pursuant to company policy constitutes a deliberate disregard of the standards an employer can rightfully expect of an employee, *i.e.*, willful misconduct. *Azar v. Unemployment Compensation Board of Review*, 34 Pa. Com-

monwealth Ct. 23, 26, 382 A.2d 995, 996 (1978); *Ferko v. Unemployment Compensation Board of Review*, 9 Pa. Commonwealth Ct. 597, 601, 309 A.2d 72, 74 (1973); *Horan v. Unemployment Compensation Board of Review*, 7 Pa. Commonwealth Ct. 194, 197, 300 A.2d 308, 309 (1973). Excessive absenteeism, where justified or where properly reported according to company policy, while still a legitimate basis for discharge, does not constitute willful misconduct and does not disqualify a claimant from receiving unemployment compensation benefits. *Welded Tube Co. of America v. Unemployment Compensation Board of Review*, 43 Pa. Commonwealth Ct. 231, 234, 401 A.2d 1383, 1385 (1979). The burden of proving willful misconduct is on the employer, *Gonzalez v. Unemployment Compensation Board of Review*, 39 Pa. Commonwealth Ct. 70, 73, 395 A.2d 292, 293 (1978), and the question of whether the behavior for which a claimant is discharged constitutes willful misconduct is a question of law and subject to review by this Court, *Mancini v. Unemployment Compensation Board of Review*, 50 Pa. Commonwealth Ct. 266, 271, 412 A.2d 702, 704 (1980). Where, as here, the party with the burden of proof fails to prevail before the Board, our scope of review is limited to determining whether the findings of fact are consistent with each other and with the conclusions of law and whether they can be sustained without a capricious disregard of competent evidence. *Aluminum Co. of America v. Theis*, 11 Pa. Commonwealth Ct. 587, 590, 314 A.2d 893, 895 (1974). We have defined capricious disregard as the "willful and deliberate disregard of competent testimony and relevant evidence which one of ordinary intelligence could not possibly have avoided in reaching a result." *Potts v. Unemployment Compensation Board of Review*, 46 Pa. Commonwealth Ct. 407, 410, 406 A.2d 585, 586 (1979).

It is undisputed here that Claimant was absent from work from September 22, 1977 until October 3, 1977, the date of her discharge. It is also undisputed that Employer had a formal, written policy concerning the procedure employees were to follow in notifying Employer of an absence. According to that policy, an employee "[w]hen taking sick leave, or an unexcused absence [must report] to the office on the first day out by 9:00 A.M. Advise also estimated date of return." Copies of this policy were displayed on bulletin boards throughout Employer's place of business and were distributed to all company employees individually on December 28, 1976. It is further undisputed that Claimant did not follow this written procedure in reporting her absences of September 22 and subsequent dates. Rather, she called co-workers in Building 3, the building in which she worked, to inform them that she was ill and would not report to work and to ask them to relay that message to someone in a supervisory position. It is disputed on the record how many times those co-workers actually reported her absences to management, but it is clear that the plant supervisor received such a message at least once and perhaps twice.

Claimant acknowledged that she was aware of Employer's formal policy for reporting absences. She testified, however, that the informal manner in which she reported was accepted practice at the company, that during past absences she had always called Building 3 rather than the main office, that no one had ever told her to call the main office rather than Building 3, and that she took calls in Building 3 from other employees reporting their absences and relayed their messages to a supervisor. Judith Nelson, a former employee of Employer, testified on behalf of Claimant and stated that at times when she was ill she had called Building 3 to report her absences, that she had

never been reprimanded for doing so, and that she was never informed of a policy stating that an employee could be discharged for calling Building 3 rather than the main office to report an absence.

Richard Bodtke, Employer's plant supervisor, testified that although the employees' practice of reporting absences by calling other employees rather than the main office was not accepted procedure it was tolerated for short term absences. He described a short term absence as being from one to two days and a long term absence as being a week or more, but he stated that the company had no formal policy differentiating between short term and long term absences. Bodtke also acknowledged that during previous absences Claimant had called her co-workers in Building 3 rather than the main office and that he had received at least one message from a co-worker concerning Claimant's absence during the September 22-October 3 period. Richard E. Bodtke, Employer's President, testified that company regulations were implemented and enforced in an informal and loose manner unless they were abused by employees. If such abuse occurred, he continued, the regulations were enforced firmly.

The Board, upon reviewing the evidence presented at the hearings and after resolving testimonial conflicts in favor of Claimant,[1] found as facts that Claimant always reported her absences by calling her department (*i.e.* Building 3),[2] that her co-workers relayed

---

[1] The Board is the ultimate fact finder in unemployment compensation cases. The Board also resolves questions of credibility and conflicts in the evidence and determines the weight to be given the evidence. *Peluso v. Unemployment Compensation Board of Review*, 12 Pa. Commonwealth Ct. 250, 252, 254, 315 A.2d 340, 341, 342 (1974).

[2] Employer objects to the Board's finding that Claimant "always" reported off by calling her department because there is

these messages to Employer,[3] that when Claimant was absent due to illness on September 22, 1977 she "followed her past practice" of calling a co-worker who relayed her message to Employer, that Employer received the message, and that she was discharged for not reporting her absence directly to Employer "although she continued to report off in her usual manner." Based upon these findings of fact, the Board concluded that Employer was notified of Claimant's absences and that her conduct in reporting "in her usual manner" was not willful misconduct.

Our review of the record reveals no inconsistency among the various findings of fact and conclusions of law nor does it indicate that the Board's findings of fact and conclusions of law were made in capricious disregard of competent evidence. We were faced with a situation strikingly similar to the one here in *Unemployment Compensation Board of Review v.*

---

evidence on the record that Claimant *once* had a friend call for her. Such an objection is without merit where the issue is not who placed the call but rather whether the call was placed at all.

[3] Employer also objects to the Board's finding, at least by implication, that a co-worker "always" relayed Claimant's notice of absence to Employer. Although the number of times Employer received a message from Claimant's co-workers concerning her absences is disputed, it is not disputed that Employer received at least one such message. It is unclear whether Claimant was required to report her absences to Employer daily. Employer's written policy concerning absences clearly states that employees should report "on the first day out" and should "Advise also estimated date of return." In any event, Employer was on notice as to Claimant's method of reporting her absences and Employer's supervisor even asked another employee to tell Claimant that she should call the main office and not Building 3 to report her absences. We find it ironic that Employer would resort to such an informal method of sending a message to Claimant when it was concerned about the formality of her giving notice. Surely a representative of Employer could have called Claimant personally or sent her a written warning concerning her method of reporting absences.

*Blouse,* 23 Pa. Commonwealth Ct. 66, 350 A.2d 220 (1976). President Judge (then Judge) CRUMLISH there wrote,

> [T]he question of whether notice was given at all is one of fact, while the sufficiency of that notice is one of law. All parties agree that at various times Claimant did give notice of her absences to her employer by informing a girl with whom she rode to work, a foreman, a night watchman, and other fellow workers. The legal adequacy of these kinds of notice must be established by looking to the company's policy with regard to reporting absences. Unfortunately, the testimony of Mr. Leuthe, the company president, is all too equivocal to know exactly what procedure Claimant should have followed. Claimant's testimony is far less equivocal on this point and indicates that she followed procedures in effect and commonly understood in the company.

*Id.* at 69, 350 A.2d at 222. We find that language to be controlling in this case, as well.

Here, Employer had a formal policy for reporting absences. Employer also tolerated a less formal reporting procedure and Employer had notice that its employees, including Claimant, followed the less formal procedure. Employer of course had the right to discharge Claimant for excessive absenteeism. Claimant's conduct leading to her discharge did not constitute willful misconduct, however, and she will not be denied unemployment compensation benefits on that basis.

The order of the Unemployment Compensation Board of Review is affirmed.

ORDER

AND Now, this 11th day of August, 1980, the Order of the Unemployment Compensation Board of Review at No. B-169427, entered March 1, 1979, awarding unemployment compensation benefits to Claimant Kathleen Johnston is affirmed.