SETON COMPANY, Petitioner,

v.

UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 14, 1995.
Decided Aug. 7, 1995.

Sanford Kelson, for petitioner.

James K. Bradley, Asst. Counsel, and Clifford F. Blaze, Deputy Chief Counsel, for respondent.

Before SMITH and FRIEDMAN, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

Seton Company (Employer) appeals from the order of the Unemployment Compensation Board of Review (UCBR) that reversed the referee's denial of benefits to Gary L. Carrol (Claimant) under Section 402(e) of the Pennsylvania Unemployment Compensation Law (Law).[1] We reverse.

Claimant worked for Employer as a full-time layout person on a leather processing press. Employer has a Corrective Action Procedure (Procedure) which sets forth examples of offenses which warrant corrective action, up to and including discharge. Examples of offenses which may warrant corrective action and/or discharge are unsatisfactory work, insubordination, failure to follow instructions, violation of company policies and carelessness. (57a–58a). The Procedure states that it will "*generally* apply: 1) a verbal warning, 2) a written warning and a meeting with [the] group leader, 3) suspension from work without pay for up to three (3) days, and 4) discharge." (Emphasis added) (58a). The Procedure also states that as no set of rules or procedures can cover all possible situations and circumstances that rules should be considered guidelines and may change from time to time depending on the circumstances, and where appropriate, the company will apply corrective action for violation of the rules and regulations as well as for improper conduct of a common sense nature. (57a).

Prior to Claimant's discharge on September 6, 1994, he had received four previous warnings. First, Employer gave Claimant a written warning for unsatisfactory work while inspecting hides. The second warning was for insubordination and violation of company policies for knowingly stamping the wrong initials on a pile of leather from another shift which would give his team credit for another team's work. According to that written warning, the next consequence would have been a three-day suspension without pay. (60a). A third written warning for violation of company policies did not result in suspension but stated that the next consequence would be termination. (61a). Two days later, Employer issued a written warning for unsatisfactory work and carelessness. This fourth written notice emphasized it was the last warning and that any more violations would result in a dismissal. (62a). Claimant met with his group leaders to discuss the violations and failure to follow proper procedures.

On September 6, 1994, Employer assigned Claimant and a co-employee the quality control responsibility of checking that the correct dies were being used to cut leather for a job. As part of the procedure in checking the dies, Claimant was to compare each die with a template and mark a log book noting both dies and their condition. Instead of inspecting the dies, Claimant copied a list of die entries noted in a August 1994 log book. Further, rather than marking the log book with his own initials, he wrote the initials of a co-employee. After an audit, Claimant admitted to these actions. Employer discharged Claimant for willful misconduct.

Claimant filed for unemployment benefits which the Job Center denied. On appeal, the referee denied Claimant benefits; however, the UCBR reversed holding that Claimant's conduct was not tantamount to willful misconduct because: 1) Employer had failed to follow its progressive disciplinary procedure; 2) in the final incident, Claimant made an honest mistake and did not intend to violate company policy; and 3) Claimant was subjected to disparate treatment and similarly situated employees were not discharged.

On appeal to this Court,[2] Employer argues that the UCBR's findings of fact are not supported by substantial evidence and that the UCBR erred as a matter of law in holding that Claimant's actions were not willful misconduct.

Employer argues that the UCBR's finding that Employer had not followed its Procedure is not supported by substantial

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(e).

2. Our scope of review is limited to a determination of whether constitutional rights were violated, an error of law was committed or whether necessary findings of fact are supported by substantial competent evidence. 2 Pa.C.S. § 704.

evidence.[3] Because Claimant had never been suspended for rule infractions, the UCBR found Employer did not follow his disciplinary procedure. This finding is not supported by substantial evidence.

While the Procedure states that a suspension is *generally* required, the Procedure must be viewed as a flexible document because of the use of the word "generally." Although Employer never suspended Claimant, in the two last written warnings Employer noted that if further infractions arose, Claimant would be discharged. The Procedure also emphasizes that rules are considered guidelines and could change from time to time. (57a). Claimant certainly had ample notice that further infraction of the rules would result in discharge. Therefore, we hold that the UCBR's finding that Employer did not follow its Procedure is not supported by substantial evidence as Employer's Procedure is not mandatory, but is flexible and Claimant had ample notice of impending discharge.

▮ Next, Employer argues that the UCBR's finding that Claimant was unaware that signing another individual's initials to the "die log book" was a violation of company policy and that this was an accepted past practice is not supported by substantial evidence. Employer asserts that no evidence was introduced that signing another individual's initial was accepted past practice. We agree.

▮ For an action to be considered acceptable as past practice in the employment situation, it must be a practice which is unequivocal, clearly enunciated and acted upon, readily ascertainable over a reasonable period of time as fixed and established practice accepted by both employer and employees. *See generally, School District of Philadelphia v. Philadelphia Federation of Teachers, Local 13,* 168 Pa.Commonwealth Ct. 671, 651 A.2d 1152 (1994). There is no testimony whatsoever in the record that management knew of or accepted the practice where an employer would use another's initials for in-

spection purposes. Even if Claimant had not known that this was a violation of company policy, under Employer's Procedure such action would be considered improper conduct of a common sense nature, as the practice of signing one's initials is verification by that person and no one else. Therefore, we hold that the UCBR's finding that Claimant's use of another individual's initials was an accepted past practice is not supported by substantial evidence. Further, the UCBR's finding that Claimant made an honest mistake and did not intend to violate Employer's policy is also not supported by the evidence as this too is contrary to common sense practice and certainly a disregard of standards of behavior which an employer has the right to expect of an employee.

▮ Employer also challenges the UCBR's findings that Claimant was subject to disparate treatment. We have carefully reviewed the record and find nowhere that Employer knew of a similar incident and failed to discipline the employee. Claimant's co-worker, to the extent that he too engaged in willful misconduct, did not possess the same disciplinary record as Claimant. Disparate treatment requires not only unlawful discrimination but is found when similarly situated people are treated differently, based upon improper criteria. *American Racing Equipment, Inc. v. Unemployment Compensation Board of Review,* 144 Pa.Commonwealth Ct. 310, 601 A.2d 480 (1991). In *American Racing,* we found no disparate treatment had occurred because the terminated employee was not similarly situated because he was a manager and the other two employees, who were not discharged for the same actions, were not managers. Here, the co-employee had no previous disciplinary history as did Claimant and thus, was not similarly situated. Therefore, we hold that the UCBR's finding that disparate treatment occurred is not supported by substantial evidence.

▮ Section 402(e) of the Law provides that an employee shall be ineligible for compensation for any week in which his unem-

---

3. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a finding of fact. *Ryan v. Unemploy-* *ment Compensation Board of Review,* 120 Pa.Commonwealth Ct. 80, 547 A.2d 1283 (1988).

ployment is due to discharge from work for willful misconduct connected to his work. Although not defined by the Law, willful misconduct has been defined as an act of wanton or willful disregard of an employer's interest, a deliberate violation of an employer's rules, a disregard of the standards of behavior which an employer has the right to expect of an employee, or negligence indicating an intentional disregard of an employer's interest or of the employee's duties and obligations to the employer. *Myers v. Unemployment Compensation Board of Review,* 533 Pa. 373, 625 A.2d 622 (1993). Because willful misconduct is a question of law, *Harris v. Unemployment Compensation Board of Review,* 67 Pa.Commonwealth Ct. 537, 447 A.2d 1060 (1982), under *Myers,* Claimant has certainly met the definition of willful misconduct. Therefore, we hold that the UCBR erred as a matter of law in holding that Claimant's actions were not willful misconduct.

Accordingly, we reverse.

### ORDER

AND NOW, this 7th day of August, 1995, the order of the Unemployment Compensation Board of Review in the above-captioned matter is hereby reversed.