IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Denis Pchelkin,                          :
                    Petitioner           :
                                         :
            v.                           :
                                         :
Unemployment Compensation                :
Board of Review,                         :    No. 1523 C.D. 2018
                    Respondent           :    Submitted: September 13, 2019


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON                   FILED:  December 13, 2019


            Denis Pchelkin (Claimant) petitions for review of the October 25, 2018

order of the Unemployment Compensation Board of Review (Board) affirming the

decision of the referee to deny Claimant unemployment compensation benefits

(benefits) under Section 402(e) of the Unemployment Compensation Law (Law),[1]

which provides that a claimant shall be ineligible for benefits in any week in which

his unemployment is due to willful misconduct connected with his work.  Upon

review, we affirm.

_____
[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).

Claimant worked full-time as a field consultant trainee for 7-Eleven, Inc. (Employer) from July 31, 2017 through February 21, 2018. Certified Record (C.R.), C.R., Board's Decision & Order at 1, Finding of Fact (F.F.) 1. Claimant served as a store manager and was in training to become a district manager. Board's F.F. 2. Employer has a policy prohibiting non-employees from working at Employer's worksites, due to wage and hour, safety and liability concerns. Board's F.F. 3; *see also* Employer's Policy at 2, Reproduced Record (R.R.) at 37a.[2] Claimant was or should have been aware of this policy. Board's F.F. 5. Employer discovered through reports from associates and a field consultant, who was Claimant's mentor, that Claimant permitted a non-employee, his girlfriend, to work in the store. Board's F.F. 6; Referee's F.F .4, R.R. at 31a. Employer confirmed these reports by remotely reviewing in-store camera footage and sending officials to the store. Board's F.F. 7. Claimant's girlfriend was resetting shelves, discussing ways to improve the store with Claimant and spent between two and four hours at Claimant's store. Board's F.F. 8.[3] Claimant was assigned different areas of the store to manage and re-categorize, and Claimant's girlfriend was observed with papers in her hands, doing "shelving" and other tasks in several areas of the store. Board's F.F. 9. Employer discharged Claimant for violating its policy by allowing his girlfriend to work in the store. Board's F.F. 10.

Claimant thereafter applied for and was denied benefits by the Indiana Unemployment Compensation Service Center (UC Service Center) pursuant to

---

[2] Employer's "Non-Store Employee Information and Acknowledgement" provides, in a section titled "Employee Safety," that "[o]nly authorized, on-duty employees are permitted to perform any work in or around the store." Employer's Policy at 2, R.R. at 37a.

[3] Claimant testified that there were two occasions when his girlfriend 'waited' in the store—once for about two hours, and another time for around four hours. *See* Hearing, 5/24/18, Transcript of Testimony (T.T.) at 26, R.R. at 27a.

Section 402(e) of the Law, 43 P.S. § 802(e). UC Service Center Determination at 1, R.R. at 38a.

Claimant appealed to a referee, who conducted a hearing at which Claimant, Employer's human resource business partner, Employer's market manager and Employer's tax consultant representative appeared. Hearing, 5/24/18, Transcript of Testimony (T.T.) at 1-2, R.R. at 1a-2a. The referee affirmed the UC Service Center's determination, finding that Employer met its burden of proving that Claimant was discharged for willful misconduct in connection with his work pursuant to Section 402(e) of the Law, 43 P.S. § 802(e). Referee's Decision & Order at 3, R.R. at 32a. Claimant then appealed to the Board, which affirmed the referee's denial of benefits. C.R., Board's Decision & Order at 3. The Board found that Claimant committed willful misconduct by violating Employer's work rule, thereby precluding eligibility for benefits under Section 402(e) of the Law. *Id.* at 2-3.

Before this Court,[4] Claimant contends that violating an employer's work policy does not constitute willful misconduct when the employer previously tolerated the same violation of its work policy. Claimant's Brief at 22 (citing *Penn Photomounts, Inc. v. Unemployment Comp. Bd. of Review*, 417 A.2d 1311, 1314-15 (Pa. Cmwlth. 1980)). Claimant further asserts that "[a]n employer's tolerance of the employee's conduct need not be explicit." *Id.* (quoting *Betres Grp., Inc. v. Unemployment Comp. Bd. of Review* (Pa. Cmwlth., No. 1607 C.D. 2016, filed Feb. 26, 2018), slip op. at 6-7).[5] Claimant relies on *Penn Photomounts*, a case in which

---

[4] This Court's review is limited to a determination of whether substantial evidence supported necessary findings of fact, whether errors of law were committed or whether constitutional rights were violated. *Johns v. Unemployment Comp. Bd. of Review*, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth. 2014).

[5] This Court's unreported memorandum opinions may be cited for persuasive value. Commonwealth Court Internal Operating Procedure § 414(a), 210 Pa. Code § 69.414(a).

this Court held that a claimant could not have been found to have committed willful misconduct for violating employer's formal policy for reporting absences, where the employer had tolerated a less formal reporting procedure. *Id.*

Claimant contends that, here, record evidence supports that Employer did not strictly enforce its policy, as it had tolerated the decision of Michael Murphy (Murphy), the field consultant at the store and also Claimant's coach,[6] to allow a homeless man to work at the store for several weeks and did not terminate Murphy for his actions. Claimant's Brief at 22; T.T. at 7, R.R. at 8a. Claimant asserts that because Murphy was a field consultant for the store, effectively Claimant's supervisor and mentor, and also a "higher-level individual representative of [Employer] as a whole, then if Murphy was aware of the situation with the homeless man, Employer was also aware." Claimant's Brief at 24. Claimant contends that the fact that Murphy took no action gave Claimant the impression "that there was some history of nonemployees informally working within the store," similar to *Penn Photomounts. Id.* at 24. Claimant points out that no individual at the store was disciplined or reprimanded in connection with the homeless man working at the store. *Id.* at 25. Claimant therefore maintains that he had good cause for the alleged misconduct, as he was following Employer's "less formal procedure," and because Employer enforced its policy under an "ill-defined standard." *Id.* at 23 & 25.

In the alternative, Claimant asserts that his girlfriend was not working, but merely "killing time" in the store as she waited for him to drive her home. *Id.* at 19. Claimant contends that "[e]ven assuming for the sake of argument that [his] girlfriend did reset shelves, the amount and degree to which she did so could be

---

[6] Employer testified that a field consultant is similar to a district manager. T.T. at 7, R.R. at 8a.

indicative of whether she was 'working'" at the store, reasoning that there is a "difference between an individual (who works in a separate retail store) absentmindedly turning a few products so that their labels present a tidy appearance out of sheer boredom versus an individual taking direction from a supervisor to complete a specified task in straightening up a stretch of shelving." *Id.* at 18-19. Further, Claimant asserts that a reasonable person would view the situation involving the homeless man as being "of significantly greater concern and gravity" than the situation involving his girlfriend. *Id.* at 25.

The Board contends that it properly concluded that Employer terminated Claimant for willful misconduct. Board's Brief at 16. The Board emphasizes that the district manager[7] allowed the homeless man to spend some time at the store and to help take out trash for just a few weeks in order to ease the transition to a corporate store, as the store had operated as a franchise for 12 to 15 years. *Id.* at 15 (citing T.T. at 19-20 & 22, R.R. at 20a-21a & 23a). The Board maintains that, contrary to Claimant's assertion, it did not tolerate prior work violations, but rather addressed the situation involving the homeless man after becoming aware of it, such that it was not a fixed or accepted practice. *Id.* at 12 & 15 (citing *Seton Co. v. Unemployment Comp. Bd. of Review*, 663 A.2d 296, 299 (Pa. Cmwlth. 1995)). Further, the Board points out that footage from three videotapes proves that Claimant's girlfriend "was actively engaged at Employer's worksite, not absentmindedly straightening a few products." *Id.* at 13 n.2.

Section 402(e) of the Law provides that an employee shall be ineligible for compensation for any week in which unemployment is due to discharge from

---

[7] The Board is presumably referring to Murphy, the field consultant and Claimant's "mentor." *See* T.T. at 7, R.R. at 8a.

work for willful misconduct connected with his work. 43 P.S. § 802(e). Whether an employee's actions constitute willful misconduct is a question of law subject to review by this Court. *Reading Area Water Auth. v. Unemployment Comp. Bd. of Review*, 137 A.3d 658, 661 (Pa. Cmwlth. 2016). For purposes of determining a discharged employee's eligibility for unemployment compensation, the employer bears the burden of proving that the employee engaged in willful misconduct connected with his work. *Adams v. Unemployment Comp. Bd. of Review*, 56 A.3d 76, 78-79 (Pa. Cmwlth. 2012). This Court has defined willful misconduct as:

> (1) wanton and willful disregard of an employer's interests; (2) deliberate violation of rules; (3) disregard of the standards of behavior which an employer can rightfully expect from an employee; or[] (4) negligence showing an intentional disregard of the employer's interests or the employee's duties and obligations.

*Waverly Heights, Ltd. v. Unemployment Comp. Bd. of Review*, 173 A.3d 1224, 1228 (Pa. Cmwlth. 2017) (quoting *Johns v. Unemployment Comp. Bd. of Review*, 87 A.3d 1006, 1009 (Pa. Cmwlth. 2014)).

"The violation of a work rule may be considered willful misconduct[.]" *Glenn v. Unemployment Comp. Bd. of Review*, 928 A.2d 1169, 1172 (Pa. Cmwlth. 2007). "[W]hen an employer claims violation of a work rule, the employer bears the burden of proving the existence of the rule, its reasonableness and violation." *Id.* "Once the employer meets its burden, it shifts to the claimant to prove good cause for his or her action." *Id.* "Good cause is established 'where the action of the employee is justified or reasonable under the circumstances.'" *Guthrie v. Unemployment Comp. Bd. of Review*, 738 A.2d 518, 522 (Pa. Cmwlth. 1999) (quoting *Frumento v. Unemployment Comp. Bd. of Review*, 351 A.2d 631, 634 (Pa.

6

1976)).  A claimant may establish good cause for a work rule violation by demonstrating that the rule "was not enforced uniformly and that a violation thereof was not an act which was contrary to a reasonable standard of behavior which an employer could expect of an employee." *City of Beaver Falls v. Unemployment Comp. Bd. of Review*, 441 A.2d 510, 512 (Pa. Cmwlth. 1982).  A claimant may argue that the conduct in question was in line with a "past practice" accepted by the employer.  *See Seton Co.*, 663 A.2d at 299.  "For an action to be considered acceptable as [a] past practice in the employment situation, it must be a practice which is unequivocal, clearly enunciated and acted upon, readily ascertainable over a reasonable period of time as fixed and established practice accepted by both employer and employees." *Seton Co.*, 663 A.2d at 299 (citing *Sch. Dist. of Phila. v. Phila. Fed'n of Teachers, Local 3*, 651 A.2d 1152 (Pa. Cmwlth. 1994)).  Further, "to be found to have condoned an employee's conduct, there generally must be some evidence in the record that the employer directly communicated to the employee that it condoned or permitted the conduct or that the employer took some action that led the employee to believe that the employer condoned such conduct." *Betres*, slip op. at 6-7 (citing *Letterkenney Army Depot v. Unemployment Comp. Bd. of Review*, 648 A.2d 358, 361 (Pa. Cmwlth. 1994)).

*Penn Photomounts* involved a claimant who was discharged for excessive unexcused absences and failure to comply with her employer's policy for reporting absences. *Penn Photomounts*, 417 A.2d at 1312.  The employer's formal policy required employees to report absences to the office by 9:00 a.m. on their first day out. *Id.* at 1313.  The claimant did not report her absences directly to the main office, but instead utilized the informal practice of notifying co-workers who then relayed her message to the office. *Id.*  The claimant was aware of her employer's

7

formal policy, but testified that her employer accepted the informal method of reporting absences. *Id.* The claimant's co-workers had also utilized the less formal reporting procedure, and the claimant had notified supervisors of her co-workers' absences on occasion. *Id.* A former employee testified that she had adhered to the less formal practice over the course of her employment without being reprimanded or informed that such a practice could lead to termination. *Id.* Further, the employer's witness testified that it tolerated the less formal reporting procedure for short-term absences, but that it was not an "accepted procedure." *Id.* Nevertheless, the employer's witness testified "that company regulations were implemented and enforced in an informal and loose manner unless they were abused by employees," in which case "the regulations were enforced firmly." *Id.* at 1314. The Board awarded the claimant benefits and we affirmed, reasoning that although the employer had the right to discharge the claimant for excessive absenteeism, the claimant did not commit willful misconduct by following a less formal reporting procedure that was tolerated by her employer and was "in effect and commonly understood in the company." *Id.* at 1314-15.

We find that *Penn Photomounts* is distinguishable and, therefore, does not support Claimant's assertion that he had good cause for the alleged misconduct. In *Penn Photomounts*, the claimant's employer conceded that it tolerated "informal and loose" implementation of its reporting policy for short-term absences. *See Penn Photomounts*, 417 A.2d at 1314. By contrast, here, the Board determined that Employer's witness credibly testified that Employer was unaware of the practice of permitting the homeless man to work in the store in exchange for food until the store was taken back from a franchisee, at which point it was corrected. C.R., Board's Decision & Order at 3; *see also* T.T. at 21-22, R.R. at 22a-23a. "[T]he Board is the

8

ultimate fact-finding body empowered to resolve conflicts in evidence, to determine the credibility of witnesses, and to determine the weight to be accorded evidence." *Yost v. Unemployment Comp. Bd. of Review*, 42 A.3d 1158, 1164 (Pa. Cmwlth. 2012). "Questions of credibility and the resolution of evidentiary conflicts are within the discretion of the [Board] and are not subject to re-evaluation on judicial review." *Bell v. Unemployment Comp. Bd. of Review*, 921 A.2d 23, 26 n.4 (Pa. Cmwlth. 2007). "[T]he Board . . . may reject even uncontradicted testimony if it is deemed not credible or worthy of belief." *Stockdill v. Unemployment Comp. Bd. of Review*, 368 A.2d 1341, 1343 (Pa. Cmwlth. 1977).

It is not possible for an employer to tolerate or condone policy violations of which it is unaware. *See Seton Co.*, 663 A.2d at 299 (finding claimant failed to establish that his work policy violation was in line with a past practice accepted by employer where "[t]here [was] no testimony whatsoever in the record that management knew of or accepted the practice"); *see also Holtslander v. Unemployment Comp. Bd. of Review* (Pa. Cmwlth., No. 1655 C.D. 2014, filed Apr. 28, 2015), slip op. at 10 (holding claimant failed to establish employer accepted a purported past practice, where there was no indication that employer sanctioned the practice or "was even aware of it").

Further, Claimant's argument that Murphy's alleged condonation of the homeless man working at the store led Claimant to believe that Employer sanctioned the practice lacks merit. Employer's market manager testified that the homeless man "started showing up as the store got corporate" (the store was transitioning from a franchise to a corporate store), that the franchisee's employees who stayed on "didn't know any better" and that Murphy dealt with the situation when he became aware of it. T.T. at 21, R.R. at 22a. Although Employer's market manager acknowledged

9

that Murphy permitted the homeless man to "hang out for a little bit," he specified that this was only "until [Employer] kind of figure[d] out how . . . to handle [the situation] so the customers, the community, weren't offended that we're throwing this guy out of the store," and that it "was a transition phase." T.T. at 22, R.R. at 23a. Employer's human resource business partner also testified that "appropriate action was taken with Michael Murphy" when Employer became aware of the practice. T.T. at 1 & 13, R.R. at 2a & 14a.

Assuming, *arguendo*, that Murphy in fact condoned a violation of Employer's policy, we note that "[t]he mere fact that a practice occurred in the past is not sufficient to show a 'past practice' in the legal sense"—an "[e]mployer's acceptance of the practice is also necessary." *Holtslander*, slip op. at 9-11 (emphasis added) (holding that claimant failed to demonstrate that a barter system among employees constituted a "past practice" accepted by employer, where he failed to "establish [e]mployer's knowledge or consent to . . . deviations from [its] policy" that happened "maybe a couple a [sic] times"); *see also Temple Univ. of the Com. Sys. of Higher Educ. v. Unemployment Comp. Bd. of Review*, 772 A.2d 416, 419 (Pa. 2001) (holding that claimant's mistaken belief that his supervisor had the authority to authorize the conduct failed to provide good cause for engaging in such conduct). As noted above, "[f]or an action to be considered acceptable as [a] past practice in the employment situation, it must be a practice which is unequivocal, clearly enunciated and acted upon, readily ascertainable over a reasonable period of time as fixed and established practice accepted by both employer and employees." *Seton Co.*, 663 A.2d at 299. Claimant fails to establish any of these factors. We therefore agree with the Board that Claimant lacked good cause for violating Employer's policy.

10

Regarding Claimant's argument in the alternative that his girlfriend was not working in the store but merely "killing time" until he could drive her home, we note that the Board did not credit Claimant's testimony in this regard. *See* Claimant's Brief 19; *see also* C.R., Board's Opinion & Order at 3. Again, as noted, the Board's credibility determinations are not subject to re-evaluation on judicial review. *Bell*, 921 A.2d at 26 n.4; *see also* discussion *supra* 9. We, therefore, decline to review this credibility determination of the Board.

Claimant additionally contends that the Board's findings of fact numbers 6 through 10, regarding reports of Claimant's girlfriend working in the store and the subsequent investigation into such, lack substantial evidentiary support, because they are based on hearsay. Claimant's Brief at 16-20. Claimant asserts that Employer's "witnesses"[8] did not view the videotape footage in question, but rather testified that his girlfriend was working at the store on the basis of a third-party's description of the alleged activities. *Id.* at 17. Claimant maintains that Employer's "witnesses" were the only source of information regarding how Employer's asset protection team reviewed videotape footage of the store. *Id.* at 16-17. Claimant therefore asserts that Employer's testimony that the videotape footage evidenced that his girlfriend was working at the store constitutes hearsay. *Id.* Claimant also contends that Employer failed to present the videotape footage during the hearing. *Id.* at 17. Further, Claimant specifically asserts that the Board's finding of fact number 7—that Employer conducted an investigation confirming that Claimant permitted a non-employee to work at the store—lacks substantial evidentiary support, as it is undermined by the fact that the investigation of Claimant was led at

---

[8] We note that although three witnesses testified for Employer, only Employer's market manager testified regarding the videotape footage. *See* T.T. at 5-6, 10, 15, 20 & 27; R.R. at 6a-7a, 11a, 16a, 21a & 28a.

11

least in part by Murphy, who had previously "condoned egregious violations of the same policy in the past." *Id.* at 17-18 (citing T.T. at 6-7, R.R. at 7a-8a).

The Board counters that substantial evidence supports the challenged findings of fact. Board's Brief at 7. The Board further asserts that the testimony of Employer's market manager regarding what he viewed on the videotapes is not hearsay, because such testimony is permissible in an unemployment compensation proceeding and a videotape need not be introduced into evidence where the opposing party had the opportunity to cross-examine the witness. *Id.* at 7-8 (citing *Yost*). The Board points out that Claimant's assertion that Employer's market manager did not review videotape footage is misleading, as he in fact testified that he viewed videotapes showing Claimant's girlfriend working in various parts of the store and only denied that he viewed the videotape where the homeless person went into the back of the store. *Id.* at 8. Thus, the Board asserts that the testimony of Employer's market manager was not hearsay, because it was based on personal knowledge of what he viewed on the videotapes. *Id.* at 8.

We agree with the Board that the testimony of Employer's market manager regarding the videotapes does not constitute hearsay. Hearsay is a statement, other than one made by the declarant while testifying at the current trial or hearing, offered into evidence to prove the truth of the matter asserted. Pa.R.E. 801(c). Here, Employer's market manager testified regarding what he personally observed when he viewed three videotapes, specifically showing Claimant's girlfriend in various parts of the store, at one point stocking shelves. *See* T.T. at 15, 20 & 27, R.R. at 16a, 21a & 28a. Claimant had the opportunity to cross-examine Employer's market manager regarding what he observed on the videotapes.[9] *See*

---

[9] The referee noted at the hearing that Claimant could have subpoenaed the videotapes if he wanted them at the hearing. T.T. at 23, R.R. at 24a.

*Yost*, 42 A.3d at 1164. Thus, the testimony of Employer's market manager does not constitute hearsay. *See id.* at 1163-64 (holding that testimony did not constitute hearsay even though employer's witness "was not present when the altercation took place," where he "testified as to what he observed on the video" and "[c]laimant had the opportunity to cross-examine [employer's witness] concerning his observations"); *Rich v. Unemployment Comp. Bd. of Review* (Pa. Cmwlth., No. 776 C.D. 2013, filed Jan. 15, 2014), slip op. at 6-7 (holding that the testimony of employer's witness did not constitute hearsay, even though he was not present when the incident took place, where he related his personal observations of the conduct depicted on the surveillance videotape and claimant had the opportunity to cross-examine him concerning his observations).

Further, we find meritless Claimant's contention that the Board's finding of fact number 7—that Employer in fact conducted an investigation confirming that Claimant permitted a non-employee to work at the store—is not supported by substantial evidence, because Murphy's involvement somehow undermined Employer's investigation. Claimant provides no support for this bald assertion and, in essence, asks us to accord less weight to the evidence supporting the Board's finding. We reiterate that "the Board is the ultimate fact-finding body empowered . . . to determine the weight to be accorded evidence." *Yost*, 42 A.3d at 1164. Further, we must examine the evidence in the light most favorable to Employer, as the prevailing party, and to give Employer the benefit of all inferences that can be logically and reasonably drawn from the testimony. *See Wise v. Unemployment Comp. Bd. of Review*, 111 A.3d 1256, 1262 (Pa. Cmwlth. 2015).

The Board's findings of fact are conclusive on appeal so long as the record, taken as a whole, contains substantial evidence to support those findings.

13

*Taylor v. Unemployment Comp. Bd. of Review*, 378 A.2d 829, 831 (Pa. 1977). Ample record evidence supports that Employer conducted an investigation which confirmed that Claimant's girlfriend was working in the store. *See* T.T. at 7, R.R. at 8a (testimony of Employer's human resource business partner that Claimant's immediate supervisor, Employer's asset protection partner and Murphy were a part of the "on-site investigation"); T.T. at 15, R.R. at 16a (testimony of Employer's market manager that he viewed videotape footage of Claimant's girlfriend in the store and discussed this footage with a member of the asset protection team). Claimant's own testimony reveals that he and his girlfriend "were resetting shelves" while "talking about ideas and potentially [sic] things that [they] could do better in the store." T.T. at 26, R.R. at 27a. We therefore agree with the Board that its findings do not lack substantial evidentiary support. Thus, the Board did not err in concluding that Employer discharged Claimant for willful misconduct in connection with his work and is, therefore, ineligible for benefits under Section 402(e) of the Law, 43 P.S. § 802(e).

      Accordingly, we affirm.

 

_____
CHRISTINE FIZZANO CANNON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Denis Pchelkin,                          :
                    Petitioner           :
                                         :
          v.                             :
                                         :
Unemployment Compensation                :
Board of Review,                         :    No. 1523 C.D. 2018
                    Respondent           :

## O R D E R

AND NOW, this 13th day of December, 2019, the October 25, 2018 order of the Unemployment Compensation Board of Review is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge