IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert R. Hulshizer, : 
              Petitioner : 
              : 
        v. : No. 348 C.D. 2019
              : No. 349 C.D. 2019
Unemployment Compensation Board : Submitted: January 10, 2020
of Review, : 
            Respondent : 

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
             HONORABLE MICHAEL H. WOJCIK, Judge
             HONORABLE J. ANDREW CROMPTON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT             FILED: February 18, 2020

Before this Court are consolidated petitions for review filed, *pro se*, by Robert R. Hulshizer (Claimant). Claimant seeks review of an adjudication of the Unemployment Compensation Board of Review (Board) that denied his claim for benefits for the stated reason that Claimant did not appear for work for three consecutive shifts and did so without notifying his employer. The Board affirmed the Referee's decision that Claimant's actions constituted willful misconduct, which rendered him ineligible for benefits under Section 402(e) of the Unemployment Compensation Law (Law).[1] Claimant also seeks review of the Board's denial of his request for reconsideration, by which Claimant sought to present evidence that was unavailable at the time of the Referee hearing. We affirm both adjudications.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, Section 402(e) states, in relevant part, that "[a]n employe shall be ineligible for compensation for any week ... [i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct...." 43 P.S. §802(e).

Claimant worked part-time as a produce clerk for Karns Prime and Fancy Food, LTD (Employer) from October 18, 2017, through September 29, 2018. On October 15, 2018, Employer sent Claimant a letter terminating his employment for failing to report to work for three consecutive shifts. The letter noted that Employer had made numerous telephone calls to Claimant before and after the three scheduled shifts, but the calls were not answered.

Claimant applied for unemployment compensation (UC) benefits on October 21, 2018. His application stated that Employer suspended him while he was awaiting a decision from human resources on a medical concern. Employer did not respond to the UC Service Center's request for information. The UC Service Center granted Claimant benefits, and Employer appealed. At the hearing before a Referee, both Claimant and Employer presented evidence.[2]

Joshua Karns, Employer's vice president of human resources, testified that Claimant was scheduled to work from 5:00 p.m. to 10:00 p.m. on Friday, October 5, Saturday, October 6, and Sunday, October 7, 2018. According to Karns, the employee handbook states that if an employee is unable to work, he must telephone Employer at least one hour before the start of his shift. Claimant did not telephone to report his absences on any of the three days he was scheduled to work.

Karns stated that Claimant sent a letter to Employer, dated September 27, 2018, stating that he was no longer available to work Thursdays through Sundays due to a "medical condition." Certified Record (C.R.), Item 10, Exhibit E2. However, Claimant stated that he would "honor the schedule posted for 10-5, 10-6, 10-7, unless [his] medical condition abruptly changes." *Id*. On October 1 and 2, 2018, Karns telephoned Claimant to discuss the letter. On both occasions, Claimant

---

[2] Claimant was represented by counsel at the Referee hearing.

did not answer, and Karns left a voicemail. On October 3 and 5, 2018, Karns again called Claimant and received an automated message stating that the number was not accepting calls.

Karns attempted to meet with Claimant in person at the start of the 5:00 p.m. shift on Friday, October 5, 2018, but Claimant did not report to work. On Monday, October 8, 2018, Karns learned that Claimant had missed all three shifts and had not given Employer advance notice of these absences. Karns again telephoned Claimant and again received the message that the number was not accepting calls.

Hayat Wending, the store director, testified that in late September 2018 Claimant asked to be transferred from the store's produce department to its grocery department. Wending declined his request, explaining that Claimant was trained to work in the produce department. Shortly thereafter, she received Claimant's September 27, 2018, letter stating he could not work Thursdays through Sundays, but would honor the schedule for October 5, 6 and 7, 2018. Wending forwarded Claimant's letter to human resources.

Claimant testified that he has an immune system problem and that two months after he began working for Employer he began to develop skin lesions and other symptoms. Claimant had "to gargle with salt water and put saline up [his] nose before and after [he ate]" to alleviate the symptoms. Notes of Testimony, 12/14/2018, at 12 (N.T. __). On September 23, 2018, his doctor gave him "a Metronidazole five-pack … because [he] was on the verge of whooping cough." *Id*. He was also "on the verge of bronchial pneumonia and bronchitis…." *Id*. Claimant's doctor recommended that he wear a paper mask to work.

3

Claimant testified that shortly after his doctor visit, he asked Employer if he could wear a paper mask while working in the produce warehouse. He asked Wending if he could transfer to another department because the "bacterial overload coming from the backend of the warehouse from the dumpster was [making him sick]." N.T. 8. When the transfer was denied, Claimant decided not to work Thursdays through Sundays, which were the days of the week the odor in the warehouse from the dumpster was more pronounced. Claimant testified that he wore a paper mask to work on September 29, 2018.

Claimant testified that on October 5, 2018, he sent another letter addressed to Karns and Wending. N.T. 13.[3] The letter stated that on September 28, 2018, Claimant asked Wending if he could wear a paper mask and had yet to receive a response. Claimant then testified that on October 5, 2018, he became sick after eating at a restaurant. Claimant stated that he attempted to call off sick three times that day, but "got hung up [on] every time[.]" N.T. 11. He explained that he had "to call [Employer's] store in Lemoyne, and then you transfer to your department, department number 6 which has a phone right back there at the manager's desk [in the produce department]." *Id*.

Claimant testified that he was too ill to call Employer on October 6 or 7, 2018, to report his absences. Claimant stated that on October 7th his friends were "knocking on [his] door … because they know how violently sick [he] get[s] … when [he] get[s] a bacterial overload." N.T. 12. Claimant testified that there were no incoming calls from Karns on his cell phone and that he never sets his phone "to

---

[3] Claimant's letter references Hayat "Fidilat." C.R. Item 10, Exhibit C1. Notably, Wending's employee email account lists her name as "Hayat Fdilat." C.R. Item 10, Exhibit E4 (email). Presumably, Hayat Fidilat and Hayat Wending are the same person.

not receiving calls[.]" N.T. 15. According to Claimant, any messages Karns left went "to an incomplete box" because he had not set up voicemail. *Id.*

Karns then presented additional testimony about the calls he made to Claimant. He explained that Employer's phone system logs all calls, and he produced a spreadsheet showing that he placed seven calls to Claimant's number between October 1, 2018, and October 9, 2018. C.R. Item 10, Exhibit E3. The spreadsheet was admitted into the record without objection.

Wending also presented additional testimony about Claimant's letter of October 5, 2018, which she received on October 12, 2018. In response, she sent an email to Karns, correcting statements in Claimant's letter. Her email, C.R. Item 10, Exhibit E4, was admitted without objection. Wending testified that she recalled Claimant mentioning a paper mask on the day he asked to be transferred to the grocery department, but he did not request to wear one. If he had, she would have forwarded his request to human resources to make the decision.

The Referee found that Claimant knew he was scheduled to work on October 5, 6 and 7, 2018, but did not report to work or notify Employer that he would be absent. The Referee found that Claimant deliberately violated Employer's policy and disregarded the standards of behavior Employer had the right to expect of an employee by not showing up for work or informing Employer that he would be absent. The Referee discredited Claimant's testimony that Employer hung up when Claimant attempted to call on October 5, 2018, and was too sick to call Employer on October 6 and 7, 2018. The Referee credited Karns' testimony that he made several attempts to contact Claimant to no avail. Based on these findings, the Referee held Claimant was ineligible for benefits by reason of willful misconduct.

5

Claimant, *pro se*, appealed to the Board. The Board affirmed the Referee and added two additional findings of fact: (1) Employer made several attempts to contact Claimant after his three missed shifts but Claimant never responded, and (2) Employer has a policy requiring employees to report an absence at least one hour before the start of a scheduled shift. Claimant requested reconsideration from the Board to present new evidence that was not available at the time of the hearing. Claimant did not describe the evidence but stated that he would submit it to the Board once reconsideration was granted. The Board denied reconsideration, without an opinion.

Claimant petitioned for this Court's review.[4] In his brief, Claimant asks a series of questions and requests this Court to provide the answers. *See* Claimant Brief at 6, 10.[5] Claimant then proclaims that his "mission … is to ask for the [C]ourt's understanding of the Law along with the [C]ourt[']s patience and your [k]nowledge and your expertise." Claimant Brief at 10. Claimant requests that "the [C]ourt … weigh the scales of justice for a 'good cause' and 'goodwill' for all." *Id.* Claimant does not, however, identify any specific error by the Board. The argument section of Claimant's brief is confusing and claims that Employer fabricated evidence and changed its corporate policies while Claimant was on a leave of absence. Claimant's brief does not comply with the Rules of Appellate Procedure.

---

[4] Our review of the Board's decision "is limited to determining whether the necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated." *Johns v. Unemployment Compensation Board of Review*, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth. 2014).

[5] For example, Claimant asks why Employer was permitted to discuss its work policy and present fabricated evidence and why his attorney did not object. He asks why Wending and Gingrich denied awareness of his medical condition. He asks why the Referee acted insubordinately and was allowed to make a misstatement of fact in the transcript and the record, which he vaguely identifies as "Referencing Friends available." Claimant Brief at 6. He asks why the Referee found him not credible and why the Board denied reconsideration.

6

*See* PA. R.A.P. 2116(a)[6] and 2119(a)-(e).[7] We glean from Claimant's brief that he believes he had good cause for his actions and the Board erred in rejecting his evidence.

---

[6] It provides:

> The statement of the questions involved must state concisely the issues to be resolved, expressed in the terms and circumstances of the case but without unnecessary detail. The statement will be deemed to include every subsidiary question fairly comprised therein. No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby. Each question shall be followed by an answer stating simply whether the court or government unit agreed, disagreed, did not answer, or did not address the question. If a qualified answer was given to the question, appellant shall indicate the nature of the qualification, or if the question was not answered or addressed and the record shows the reason for such failure, the reason shall be stated briefly in each instance without quoting the court or government unit below.

PA. R.A.P. 2116(a).

[7] It provides:

> (a) General rule. The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part--in distinctive type or in type distinctively displayed--the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent.
>
> (b) Citations of authorities. Citations of authorities in briefs shall be in accordance with Pa.R.A.P. 126 governing citations of authorities.
>
> (c) Reference to record. If reference is made to the pleadings, evidence, charge, opinion or order, or any other matter appearing in the record, the argument must set forth, in immediate connection therewith, or in a footnote thereto, a reference to the place in the record where the matter referred to appears (*see* Pa.R.A.P. 2132).
>
> (d) Synopsis of evidence. When the finding of, or the refusal to find, a fact is argued, the argument must contain a synopsis of all the evidence on the point, with a reference to the place in the record where the evidence may be found.
>
> (e) Statement of place of raising or preserving of issues. Where under the applicable law an issue is not reviewable on appeal unless raised or preserved below, the argument must set forth, in immediate connection therewith or in a footnote thereto, either a specific cross-

We begin with a review of the law on willful misconduct. Although not defined in the Law, the courts have established that it means the following:

> (1) an act of wanton or willful disregard of the employer's interest;
>
> (2) a deliberate violation of the employer's rules;
>
> (3) a disregard of standards of behavior which the employer has a right to expect of an employee; [or]
>
> (4) negligence indicating an intentional disregard of the employer's interest or of the employee's duties and obligations to the employer.

*Altemus v. Unemployment Compensation Board of Review*, 681 A.2d 866, 869 (Pa. Cmwlth. 1996). Whether conduct rises to the level of willful misconduct is a question of law to be determined by this Court. *PMA Reinsurance Corp. v. Unemployment Compensation Board of Review*, 558 A.2d 623, 625 (Pa. Cmwlth. 1989).

It is the employer's burden to establish that a claimant's conduct constituted willful misconduct. *Conemaugh Memorial Medical Center v. Unemployment Compensation Board of Review*, 814 A.2d 1286, 1288 (Pa. Cmwlth. 2003). Where willful misconduct is based upon the violation of a work rule, the employer must establish the existence of the rule, its reasonableness, and that the employee was aware of the rule. *Bishop Carroll High School v. Unemployment Compensation Board of Review*, 557 A.2d 1141, 1143 (1989). "We have held repeatedly that the failure of an employee to report the reason for his or her absences

---

reference to the page or pages of the statement of the case which set forth the information relating thereto as required by Pa.R.A.P. 2117(c), or substantially the same information.

PA. R.A.P. 2119(a)-(e).

from work in a proper manner pursuant to company policy constitutes a deliberate disregard of the standards an employer can rightfully expect of an employee, i.e., willful misconduct." *Penn Photomounts, Inc. v. Unemployment Compensation Board of Review*, 417 A.2d 1311, 1312 (Pa. Cmwlth. 1980) (citations omitted). Once the employer meets its burden, the burden shifts to the claimant to prove that the rule was unreasonable or that he had good cause for violating the rule. *Gillins v. Unemployment Compensation Board of Review*, 633 A.2d 1150, 1156 n.3 (Pa. 1993).

In unemployment cases, "the Board is the ultimate fact finder and is, therefore, entitled to make its own determinations as to witness credibility and evidentiary weight." *Serrano v. Unemployment Compensation Board of Review*, 149 A.3d 435, 439 (Pa. Cmwlth. 2016) (citing *Peak v. Unemployment Compensation Board of Review*, 501 A.2d 1383, 1388 (Pa. 1985)). "The Board is also empowered to resolve conflicts in the evidence." *Id.* at 439 (citing *DeRiggi v. Unemployment Compensation Board of Review*, 856 A.2d. 253, 255 (Pa. Cmwlth. 2004)). "'Questions of credibility and the resolution of evidentiary conflicts are within the sound discretion of the Board, and are not subject to re-evaluation on judicial review.'" *Id*. (quoting *Peak*, 501 A.2d at 1388).

Here, Karns' credited testimony established that Claimant knew he was scheduled to work on October 5, 6 and 7, 2018, and was expected to report any absences prior to the start of a shift. Claimant was absent all three days and never contacted Employer. The burden then shifted to Claimant to establish good cause for his conduct.

Claimant's testimony that he attempted to contact Employer on October 5, 2018, was rejected as not credible, as was his testimony that he was too ill to

9

contact Employer on October 6 and 7, 2018. To the extent Claimant believes that his adverse reaction to the dumpster in the produce warehouse justified his unexcused absences, he did not make his case. Indeed, Claimant testified that he did not report to work on October 5, 6 or 7, 2018, because he became ill from something he ate at a restaurant. In short, Claimant failed to establish good cause for his conduct.

Claimant also argues that the Board erred in denying his request for reconsideration. The Board's regulations provide that reconsideration "will be granted only for good cause in the interest of justice without prejudice to any party." 34 Pa. Code §101.111(b). In determining whether good cause exists, the Board considers whether the requester "has presented new evidence or changed circumstances or whether it failed to consider relevant law." *Ensle v. Unemployment Compensation Board of Review*, 740 A.2d 775, 779 (Pa. Cmwlth. 1999). Our review of the Board's decision denying reconsideration is limited to determining whether the Board abused its discretion. *Id.*

Here, Claimant asked the Board to revisit its findings that Claimant lacked good cause for his unexcused absences and claimed to have new evidence to present. However, he did not describe the evidence. Instead, Claimant advised that he would provide the Board with the evidence once reconsideration was granted. In his brief to this Court, Claimant again states that he has new evidence to present, but he does not explain the nature of the evidence or its relevance to the case. As such, Claimant did not present the "good cause" required under 34 Pa. Code §101.111(b) for a grant of reconsideration.

10

For the above reasons, we affirm the Board's denial of unemployment benefits on the basis of willful misconduct and its denial of reconsideration.

_____

MARY HANNAH LEAVITT, President Judge

11

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert R. Hulshizer, : 
          Petitioner : 
           : 
          v. : No. 348 C.D. 2019
           : No. 349 C.D. 2019
Unemployment Compensation Board : 
of Review, : 
          Respondent : 

# **O R D E R**

AND NOW, this 18th day of February, 2020, the orders of the Unemployment Compensation Board of Review, dated February 7, 2019 and March 8, 2019 are hereby AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge