IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Paula Yvonne Caruso,                        :
                        Petitioner          :
                                            :
            v.                              :     No. 281 C.D. 2018
                                            :     Submitted: July 27, 2018
Unemployment Compensation Board             :
of Review,                                  :
                        Respondent          :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE RENÉE COHN JUBELIRER, Judge
          HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT                        FILED: September 19, 2018

Paula Caruso, *pro se*, petitions for review of an adjudication of the Unemployment Compensation Board of Review (Board) denying her claim for benefits under Section 402(e) of the Unemployment Compensation Law (Law), 43 P.S. §802(e).[1]  In doing so, the Board affirmed the Referee's decision that Claimant committed disqualifying willful misconduct by leaving work before the end of her shift.  Finding no error by the Board, we affirm.

Claimant worked for John's Diner (Employer) as a waitress from March 4, 2015, until she was discharged on August 18, 2017, for clocking out before the end of her shifts.  Claimant filed a claim for unemployment benefits, which the UC Service Center granted after determining that Claimant was not ineligible under Section 402(e) of the Law.  Certified Record (C.R.) Item No. 4, at 1.  Employer appealed, and the Referee held a hearing on September 26, 2017.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).

At the hearing, Employer presented the testimony of Anna Politsopolous (Manager) and George Politsopolous (Owner). Manager testified that on August 17, 2017, Claimant asked to leave at 7:30 p.m., even though she was scheduled to work until 10:00 p.m. Manager explained as follows:

> I had an incident where she wanted to leave, but we were still busy. She picked up a table 15 minutes before she wanted to leave and then she was demanding that she leave. And, I said to her, "You're going to stay til you're finished your table." And, then she went about telling the customer, as soon as they got their food, and I have their check with their clock-out time when they paid, that no sooner did they get their food, then Ms. Paula went over and told them that, "I'm leaving now. Would you mind taking care of these charges so that I can go home?" That's not done.

Notes of Testimony, 9/26/2017, at 8 (N.T. __). Claimant then clocked out at 8:12 p.m.

Manager stated that on August 18, 2017, Claimant got into an argument with another employee during her shift. The employee informed Manager of this incident, stating "I don't know what happened to her. She just got in my face, you know." N.T. 10. Claimant then came into Manager's office "screaming and yelling" that the other employee had pushed her. *Id.* Claimant told Manager that she could not deal with the situation and that she was going to leave early. Manager replied, "[g]o, and don't come back." N.T. 11. Claimant clocked out at 6:11 p.m.

Manager explained that she has authority over every employee's work hours. As a general rule, employees are permitted to clock out based on a first-in, first-out policy. Manager testified that Claimant regularly arrived at the restaurant two hours before her scheduled shift so that she could always be the first to leave. In response, Manager established a rule that employees were not permitted to arrive

2

more than 15 minutes before the start of their scheduled shifts. Claimant did not follow this rule. Manager testified that Claimant asked to work part-time because she could not receive Social Security disability benefits if she worked full-time.

Owner testified that Claimant was scheduled to work 4:00-10:00 p.m. four days a week, and 2:00-10:00 p.m. one day a week. He informed Claimant on several occasions that she was expected to work until 10:00 p.m. Owner testified that he accommodated Claimant after she was released from the hospital following surgery for a brain aneurysm. Owner explained:

> She had discussed her medical issue shortly after she was discharged from the hospital. I tried to work with her as best I could, get her the schedule she wanted. I was given a paper that she was, from her Doctor [], I believe, that she was eligible to return to work no restrictions. At that point, I then put her on her normal schedule as she had until she was discharged.

N.T. 23.

Claimant testified that she worked full-time for Employer from March 2015 until January 2017, when she suffered a brain aneurysm. Claimant stated that after her release from the hospital, her neurologist sent her back to work, but restricted her to working 12 to 15 hours per week. Claimant testified that Owner accepted this restriction and reduced her scheduled shifts to 15 hours per week. She also stated that she experienced memory lapses because of her aneurysm, including while she was working. Claimant acknowledged that she was scheduled to work until 10:00 p.m., but explained that she believed Owner was accommodating her medical condition. Claimant denied arriving early at the restaurant for the purpose of leaving early and denied asking Manager whether she could leave early at the beginning of her shifts.

3

Claimant testified about the incident of August 18, 2017, with another employee. Claimant recalled telling Manager that her co-worker "purposefully ran into me trying to knock me over and I can't do this during my recovery." N.T. 19. Claimant then asked Manager whether she could leave after her tables were clear, and Manager told her to "[g]o home[]" and "[d]on't come back." *Id.* Claimant stated that she then left quietly through the back door and did not yell at Manager.

The Referee rejected Claimant's testimony as not credible, explaining that it was incomplete because Claimant only reported events that were favorable to her. The Referee noted that Claimant did not provide any medical documentation about her work restrictions. The Referee credited the testimony of Employer's witnesses, including Owner's testimony that he repeatedly informed Claimant that she was expected to work until 10:00 p.m. The Referee also credited Manager's testimony that Claimant requested part-time hours so that she could qualify for Social Security disability benefits. The Referee concluded that Claimant's refusal to work her full shift constituted disqualifying willful misconduct under Section 402(e) of the Law.

Claimant appealed to the Board, contesting the Referee's findings of fact. The Board affirmed the Referee. In doing so, the Board adopted the Referee's findings, conclusions, and credibility determinations. The Board explained:

> On appeal the claimant asserts extra record evidence that was not presented at the Referee's hearing. The Board cannot consider any evidence not presented at the Referee's hearing. At the hearing, the claimant testified that she has memory problems. As such, the claimant was unable to recall many parts of the separating incident and the Board discredits her remaining testimony. Furthermore, the employer's witness offered credible testimony that the claimant was warned about leaving early multiple times and, ultimately, discharged for her final early departure.

4

Board Adjudication at 1. Claimant petitioned for this Court's review.

On appeal,[2] Claimant argues that the Board's conclusion that she committed disqualifying willful misconduct is not supported by substantial evidence. Specifically, she challenges the Board's adoption of the Referee's Findings of Fact Nos. 7, 8, 10, 13, 14 and 16-19.

In considering Claimant's appeal, we begin by noting that substantial evidence is "relevant evidence upon which a reasonable mind could base a conclusion." *Stage Road Poultry Catchers v. Department of Labor and Industry, Office of Unemployment Compensation, Tax Services*, 34 A.3d 876, 885 (Pa. Cmwlth. 2011). In reviewing a substantial evidence argument, this Court examines the evidence in the light most favorable to the prevailing party and gives that party the benefit of any inferences that can be logically drawn from the evidence. *Id.* "Findings made by the Board are conclusive and binding on appeal if the record, when examined as a whole, contains substantial evidence to support those findings." *Kelly v. Unemployment Compensation Board of Review*, 776 A.2d 331, 336 (Pa. Cmwlth. 2001).

Claimant challenges Findings of Fact Nos. 7, 8, 10, 13, 14 and 16-19.[3] In summary, the Board found, based upon Owner's and Manager's testimony, that

---

[2] Our review determines whether constitutional rights were violated, whether an error of law was committed or whether necessary findings of fact are supported by substantial competent evidence. *Seton Company v. Unemployment Compensation Board of Review*, 663 A.2d 296, 298 n.2 (Pa. Cmwlth. 1995).

[3] The challenged factual findings are as follows:

7. The Claimant previously arrived prior to her scheduled start time, and then would request to leave at 7:30 PM.

8. Other employees began to complain because the Claimant was arriving hours prior to her start time and then employees scheduled to start earlier than her would not be chosen to leave early.

Claimant left work before 10:00 p.m. on August 17 despite Employer's warnings about leaving early. She attempted to do so again on August 18 after getting into an argument with a co-worker. When Manager denied her request, she responded by yelling and screaming at Manager. Essentially, Claimant challenges the Referee's decision to credit the testimony that she was insubordinate and asks us to accept her version of events. It is well-settled that "[q]uestions of credibility and the resolution of evidentiary conflicts are within the sound discretion of the Board, and are not subject to re-evaluation on judicial review." *Miller v. Unemployment Compensation Board of Review*, 405 A.2d 1034, 1036 (Pa. Cmwlth. 1979). We reject Claimant's challenge to Findings of Fact Nos. 7, 8, 10, 13, 14 and 16-19.

Claimant next argues that the Board erred in concluding that she engaged in willful misconduct. Section 402 of the Law establishes eligibility standards for unemployment compensation. 43 P.S. §802. Section 402(e) states:

---

* * *

10. The Employer also informed the Claimant on multiple occasions that she was expected to remain until the end of her scheduled shift and that the manager on duty had sole discretion whether she was sent home early.

* * *

13. The Claimant subsequently rushed customers [on August 17, 2017,] to pay their tabs so she could leave.

14. The Claimant punched out at 8:12 PM.

* * *

16. [On August 18, 2017, t]he Claimant again asked to leave at 7:30 PM, after an argument with a coworker.

17. The manager told the Claimant, "that's not going to happen," due to her conduct on August 17, 2017.

18. The Claimant began screaming and yelling about her argument with the coworker and eventually told the manager, "I can't take this anymore!"

19. The manager told the Claimant to go and don't come back at 6:11 PM.

Referee Decision at 2.

6

An employe shall be ineligible for compensation for any week--

\* \* \*

(e) In which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work, irrespective of whether or not such work is "employment" as defined in this act[.]

43 P.S. §802(e). As this Court has explained:

There are four categories of activity that can constitute willful misconduct: (1) the wanton or willful disregard of the employer's interests; (2) the deliberate violation of the employer's rules; (3) the disregard of the standards of behavior which an employer can rightfully expect from an employee; and (4) negligence demonstrating an intentional disregard of the employer's interests or the employee's duties and obligations to the employer.

*Kelly v. Unemployment Compensation Board of Review*, 747 A.2d 436, 439 (Pa. Cmwlth. 2000) (citation omitted). Whether the conduct for which an employee has been discharged constitutes willful misconduct is a question of law. *Id.* at 438. The employer bears the burden of proving willful misconduct. Where the employer meets that burden, it then becomes incumbent upon the claimant to prove that his actions did not constitute willful misconduct or that he had good cause, *i.e.*, his actions were justified and reasonable under the circumstances. *Id.* at 439.

Here, Owner's credited testimony established that Claimant was scheduled to work until 10:00 p.m. and that he expected Claimant to work the entirety of her shift. Owner stated that he informed Claimant of these expectations. Although Owner had previously allowed Claimant to leave early, Manager explained that the restaurant's servers worked on a first-in, first-out basis and that she instituted a rule prohibiting servers from clocking in more than 15 minutes

7

before the start of their scheduled shift. Ultimately, Manager had discretion to determine whether an employee was permitted to leave before the end of her shift. Based on Owner's and Manager's testimony, the Referee found that Claimant was warned about leaving early and was discharged for her insubordinate conduct on her final day of work. The Board adopted the Referee's findings that supported the conclusion she committed disqualifying willful misconduct.

Once Employer met its burden of proving willful misconduct, the burden shifted to Claimant to show good cause for her conduct. Claimant argues that she left early on August 18, 2017, because the altercation with her co-worker made her feel "unsafe [and] unwelcome." Claimant Brief at 8. The Referee found Claimant's testimony about the incident to be not credible. Even if the Referee had deemed Claimant's testimony credible, Manager did not permit Claimant to leave early that day. Claimant was also not permitted to leave early on August 17, 2017. Simply, Claimant did not prove that she had good cause for her insubordinate conduct.

For all of the foregoing reasons, we affirm the Board's decision.

_____
MARY HANNAH LEAVITT, President Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Paula Yvonne Caruso,
    Petitioner

    v.

Unemployment Compensation Board
of Review,
    Respondent

:
:
:
:
:   No. 281 C.D. 2018
:
:
:
:

## **O R D E R**

AND NOW, this 19th day of September, 2018, the order of the Unemployment Compensation Board of Review dated February 27, 2018 in the above-captioned case is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge