IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Hair at 731,                         :
            Petitioner       :
                                  :
            v.               :  No. 949 C.D. 2018
                                  :  Submitted: January 18, 2019
Unemployment Compensation Board      :
of Review,                           :
            Respondent       :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT                        FILED: May 30, 2019

        Hair at 731 (Employer), *pro se*, petitions for review of an adjudication of the Unemployment Compensation Board of Review (Board) granting Kimberly Lazuka's (Claimant) claim for benefits under Section 402(b) of the Unemployment Compensation Law (Law), 43 P.S. §802(b).[1]  In doing so, the Board affirmed the Referee's decision that Claimant offered substantial evidence of a necessitous and compelling reason to quit.  For the following reasons, we affirm the Board's order.

        Claimant worked part-time for Employer as a stylist, and later as salon manager, from April 6, 2004, until she quit on September 20, 2017.  Claimant filed a claim for unemployment compensation benefits, which the Service Center denied

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(b), which states, in relevant part, that a claimant shall be ineligible for compensation for any week in which the claimant's unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature.

under Section 402(b) of the Law.  Claimant appealed, and the Referee held a hearing on December 4, 2017.

At the hearing, Claimant testified that at the time of her separation from employment, she and her fiancé, Christopher Natale, had entered into an agreement to purchase Employer's salon from the owner, Jane Kuniegel.  To that end, Claimant secured a loan to complete the transaction.  On September 20, 2017, Claimant and Natale met with Jane Kuniegel and her husband, Robert Kuniegel, the salon's business manager.  At their meeting, according to Claimant, Mr. Kuniegel told her that he had "no faith" that Claimant could run the salon.  Notes of Testimony (N.T.__), 12/4/2017, at 6.  When Claimant asked what she did wrong and how she could improve, Mr. Kuniegel refused to explain.  Instead, "[h]e became very irate. He stood up and started screaming" at her.  N.T. 6.  As a consequence, Claimant resigned.  Claimant stated that Mr. Kuniegel had created a hostile environment for some time and treats employees "very badly."  N.T. 7.  She stated that she would have maintained her employment but for Mr. Kuniegel's hostility and refusal to sell the business to her.

Natale testified on Claimant's behalf.  He confirmed that he and Claimant had secured a loan for the purchase of the salon, obtained an employer identification number and formed a limited liability company.  Natale testified that the meeting on September 20 was one of several he and Claimant had with the Kuniegels about their purchase of the salon.  At the beginning of the meeting, Mr. Kuniegel provided them with a document which read:

> We have at least three options.
>
> 1. Advertise the salon for sale in all available media at the real value and try to find someone to purchase the salon which gives us confidence of a long-term rental prospect.

2

2. Continue to run the hair salon with [Mrs. Kuniegel] acting as a senior manager from a remote location popping in and out now and then to work behind the desk.

3. Sell the salon at a reduced price to [Claimant] after we have completely ruled out options one and two.

Certified Record (C.R.) Item No. 9, Claimant Exhibit 1 at 1 (emphasis in original). Natale testified that at the meeting Mr. Kuniegel behaved in a hostile and aggressive manner towards Claimant. He belittled Claimant's financial wherewithal and her ability to run the salon. He refused to explain why he would not close on the sale to Claimant.

Mr. Kuniegel testified. He stated that by the time of the September 20 meeting with Claimant and Natale, he and his wife had lost confidence in Claimant's ability to run the salon. This was important to them because they intended to enter into a long-term lease with the new owner of the business. Their concern was prompted by the fact that Claimant had told other salon employees that she planned on reducing the salon's business hours. Claimant refused to listen to the Kuniegels' business model ideas, which they had developed after operating the business for 33 years. At the time of their meeting, the Kuniegels were unaware that Claimant had secured a loan to purchase the business.

Mr. Kuniegel also testified about his concerns with Claimant's attendance. For example, Claimant had asked to take off work Saturday, September 16, 2017, which was four days before the meeting at which Claimant resigned. Mrs. Kuniegel refused Claimant's request because it would have been her fourth Saturday off in a five-week period. Mr. Kuniegel explained that on the night of Friday, September 15, 2017, Claimant contacted the Kuniegels, pleading for the next day off. The Kuniegels were concerned about the message it would send to other

3

employees if Claimant missed successive Saturday shifts. Nevertheless, Mr. Kuniegel relented and emailed Claimant advising her that she could be off work on Saturday, September 16 but also suspending her for the following two days. Mr. Kuniegel further explained:

> [S]he's saying that her shift was covered, which is one of the things that we – we go out of our way to give people days off that they need. We already went out of our way to give [Claimant] three Saturdays off out of four. But, her shift was not covered. Her shift would've had to be covered by a trainee, who [Mrs. Kuniegel] said she didn't want on the floor, yet. And, that's where we lost complete confidence. She wasn't listening to anything we said, and she's saying I can run the business. She's not hearing anything that we're telling her. The reason at the meeting, and I did finally give her one reason, I'm not exactly sure what that one reason was, I think it was the Saturday day off.

N.T. 14.

Mr. Kuniegel denied acting in a hostile manner or raising his voice at the meeting on September 20, 2017. Rather, he simply asked Claimant to defer her purchase of the business because of his concern about the salon's staffing. Mrs. Kuniegel also testified and confirmed her husband's account of the meeting.

The Referee concluded that Claimant established a necessitous and compelling reason for leaving her employment. He found that Claimant had made a financial commitment as well as an investment of time to purchase Employer's business. She resigned only after Mr. Kuniegel expressed a lack of confidence in Claimant and backed out of the sale. The Referee concluded that Employer made a substantial and unilateral change in the terms and conditions of employment. Claimant acted with ordinary common sense and made a good faith effort to preserve her employment by seeking Mr. Kuniegel's advice on how to improve.

4

Employer appealed to the Board, which adopted the Referee's findings and conclusions. The Board made additional findings. It credited the testimony of Claimant "that at the meeting on September 20, 2017, [Mr. Kuniegel] became hostile, screamed at them, told the claimant he had no faith in her and questioned her ability to run a business." C.R. Item No. 12, at 1. The Board concluded that Claimant had a necessitous and compelling reason to quit because the failed sale of the salon created a hostile work environment.

On appeal,[2] Employer raises several issues. First, it argues that the Board erred because its decision is not based on the findings of fact of the Referee. Second, it argues that the Board erred in making credibility determinations, which is "solely an issue for the finders of fact." Employer Brief at 3. Third, it contends that the Board's decision was arbitrary and capricious because there was no evidence that Employer would act "against the interest of the business or against the purpose of the meeting." *Id.* at 3.

In its first issue, Employer complains that the Referee did not find that the sale of the business was part and parcel of Claimant's employment. Thus, Claimant did not have a necessitous and compelling reason for her resignation. The Board responds that it made its own findings, which it is permitted to do.

This Court's review of the Board's factual findings requires an examination of whether the record contains relevant evidence that a reasonable mind might consider adequate to support a conclusion. *Peak v. Unemployment Compensation Board of Review*, 501 A.2d 1383, 1387 (Pa. 1985). On review, this

---

[2] Our review determines "whether constitutional rights were violated, [whether] an error of law was committed or whether necessary findings of fact are supported by substantial competent evidence." *Seton Company v. Unemployment Compensation Board of Review*, 663 A.2d 296, 298 n.2 (Pa. Cmwlth. 1995).

Court may not invade the fact-finding province of the Board. *Id.* at 1388. Employer has not challenged any individual factual findings made by the Board. Rather, Employer requests this Court to accept Employer's narrative, reject Claimant's testimony, and upon these findings, reverse the Board. This we neither can nor will do. The Board's findings that Employer created a hostile work environment support its legal conclusion that Claimant had a necessitious and compelling reason to resign.

Based on these principles, we also reject Employer's argument that the Board erred in making credibility determinations because the Referee is the finder of fact. The Board is the ultimate finder of fact, empowered to determine credibility, and weigh and resolve conflicts in the evidence. *Peak*, 501 A.2d at 1386.

Lastly, we address Employer's argument that the Board's decision was arbitrary and capricious. Employer argues that the Board did not address evidence in the record, specifically the document given to Claimant at the beginning of the September 20, 2017, meeting. The document read:

> We have at least three options.
>
> 1. Advertise the salon for sale in all available media at the real value and try to find someone to purchase the salon <u>which gives us confidence of a long-term rental prospect.</u>
>
> 2. Continue to run the hair salon with [Mrs. Kuniegel] acting as a senior manager from a remote location popping in and out now and then to work behind the desk.
>
> 3. Sell the salon at a reduced price to [Claimant] after we have completely ruled out options one and two.

C.R. Item No. 9, Claimant Exhibit 1 at 1 (emphasis in original). Employer argues that the document shows that the meeting was friendly, and not hostile. It contends that the Board made arbitrary and capricious findings of fact because there was no evidence on Employer's motive.

6

Employer's arbitrary and capricious argument will be treated as a claim that the Board capriciously disregarded evidence. This occurs "where the fact finder willfully and deliberately disregards competent and relevant evidence that one of ordinary intelligence could not possibly have avoided in reaching a result." *Wise v. Unemployment Compensation Board of Review*, 111 A.3d 1256, 1262 (Pa. Cmwlth. 2015). Disturbing an agency's adjudication for a capricious disregard of evidence is appropriate only where the factfinder has refused to resolve conflicts in the evidence, has not made essential credibility determinations or has completely ignored overwhelming evidence without comment. *Id.* at 1263.

The Board made a specific finding that Claimant quit her employment due to the hostile work environment created by the Kuniegels' refusal to consummate the sale. The Board credited Claimant's testimony that she had taken a number of steps toward her goal, *i.e.*, securing a loan and employer identification number for tax purposes and creating a limited liability company. The Board also credited Claimant's testimony that during the meeting, Mr. Kuniegel became hostile and screamed at Claimant, exclaiming that he had no faith in her ability to run a business. She also testified that this pattern of hostility preceded the meeting of September 20, 2017. There was no dispute that the sales transaction had "failed."

Employer challenges the Board's conclusion because it believes that the document Employer presented at the meeting refutes Claimant's account of the meeting as hostile. That the Board does not accept Employer's characterization of the document or accept its version of the meeting does not constitute capricious disregard of evidence. Appellate courts may not reweigh the evidence.

The Board's findings of fact relevant to Claimant's decision to resign are supported by substantial evidence; the Board may make its own credibility determinations; and Employer does not argue that the facts found by the Board do not support its legal conclusion that Claimant had a necessitous and compelling reason to quit her employment. For all of the foregoing reasons, we affirm the Board's order.

_____
MARY HANNAH LEAVITT, President Judge

8

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Hair at 731,        :
    Petitioner    :
           :
   v.       : No. 949 C.D. 2018
           :
Unemployment Compensation Board :
of Review,       :
    Respondent   :

# **O R D E R**

AND NOW, this 30th day of May, 2019, the order of the Unemployment Compensation Board of Review dated June 12, 2018, in the above-captioned matter is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge