# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lehigh Valley Hospital,          :
            Petitioner      :
                            :
         v.                   :    No. 398 C.D. 2019
                            :    Submitted: December 12, 2019
Unemployment Compensation    :
Board of Review,                  :
            Respondent    :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                 HONORABLE P. KEVIN BROBSON, Judge
                 HONORABLE ANNE E. COVEY, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT            FILED: January 23, 2020

Lehigh Valley Hospital (Employer) petitions for review of an adjudication of the Unemployment Compensation Board of Review (Board) granting Mandy Vaughan's (Claimant) claim for benefits under the Unemployment Compensation Law (Law).[1] In doing so, the Board reversed the Referee's decision and made its own factual findings. On appeal, Employer argues that the Board's findings of fact are not supported by substantial evidence. For the reasons that follow, we affirm.

Claimant began working full-time for Employer as a pharmacist on May 21, 2012, and her last day of work was September 13, 2018. Employer fired Claimant on September 24, 2018, for the stated reason that she was insubordinate. Claimant filed a claim for unemployment compensation benefits, which the Service

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§751-919.10.

Center denied under Section 402(e) of the Law.[2] Claimant appealed, and the Referee held a hearing on November 30, 2018.

Employer presented the testimony of Elie Jabbour, Director of Clinical Pharmacy Services, who supervised Claimant. Jabbour explained that in August 2018, Claimant approached Jabbour with questions and concerns about her performance evaluation. Jabbour told Claimant she should e-mail her questions to him. He testified that after more than a month passed and he "didn't hear anything from [Claimant] regarding her questions, [he] felt that it was necessary to meet face-to-face." Notes of Testimony, 11/30/2018, at 8 (N.T.__); Reproduced Record at 43a (R.R.__). On September 12, 2018, Jabbour sent Claimant an "e-mail calendar invite via Outlook to meet on the next day." *Id.* at 7; R.R. 42a. Claimant did not respond to his e-mail.

On September 13, 2018, at 2:15 p.m., Jabbour called Claimant about his e-mail calendar invite. Claimant said she had not seen it. Jabbour asked Claimant to come to his office to discuss her evaluation. Claimant responded that she was uncomfortable meeting with him alone and requested to have a third party present. Jabbour told Claimant he would try to reschedule the meeting. Jabbour contacted Jeanne Hoover in Employer's Human Resources Department regarding Claimant's request to have a third party at the meeting. Hoover advised Jabbour that Claimant's request was unacceptable and that Claimant was required to meet with Jabbour because he is her direct supervisor.

Jabbour relayed this information to Claimant and offered to reschedule the meeting for September 14, 2018, with another manager present. Claimant again

---

[2] Section 402(e) of the Law states, in relevant part, that "[a]n employe shall be ineligible for compensation for any week ... [i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work...." 43 P.S. §802(e).

asked if a third party from outside of the department could attend the meeting. Jabbour informed her that was not possible, and Claimant responded "okay." *Id.* at 10; R.R. 45a.

Jabbour testified that he "called Ms. Hoover again and explained the situation, and decided to suspend [Claimant] for insubordination at that point." *Id.*; R.R. 45a. Jabbour then described his subsequent interaction with Claimant, when he informed her she was suspended. He testified as follows:

> I walked over to the pharmacy, walked across the hall to the pharmacy, and I unlocked another manager's office who wasn't there at the time, and walked up to [Claimant] and I said [Claimant], I need to speak to you in the office for a moment, and she said I'm sorry, I'm not comfortable speaking with you, and I said well, I do need to speak with you. We can either speak out here in the pharmacy, or we can step into the office, and she, she declined to go into the office, and I told her she was suspended for insubordination, for refusing to meet, and I heard back [from Hoover], and she was [to leave] the pharmacy.

> * * *

> [W]hen I advised her of her suspension, she got up and moved over to the office and wanted to discuss further, and asked why she's being suspended, and I explained to her that she's being suspended for insubordination for failure to meet. She said I'm not refusing to meet, I just want someone else present. I said well, that's refusing to meet, but this is where we argue. You need to give me a badge. You need to go. She said you can't just suspend me for, for no reason. I'm here to work. I want to finish my shift. I said I, I can, I am. You need to give me your badge. You need to leave, and then she asked to speak to someone from [Human Resources]. I said you can call them from your cell phone, not through the pharmacy. You are suspended. You need to give me your badge and you need to leave. She, she again asked why. I told her again, and I said [Claimant], at this point, you're suspended. If you don't leave, I am to call security. Either you leave or be terminated. She then

3

said why are [you] doing this? You can't do this. I again explained it. I said we can talk this out in a separate meeting, but for right now, you're suspended. I believe she asked me why we couldn't run through the, the reasons again. The second time I said [Claimant], if you don't leave, I have to call security and you will be terminated, and she said I'm not going unless I talk to someone from HR. So, rather than go through the scene of having security come in and kick her out, I decided okay, I'm just going to have her talk to HR. If she talks to them, they'll confirm that she's suspended, and kind of resolve the situation. So, I left the office and let her use the phone in the office. She was on the phone with HR for about 30 minutes or so, and only after the phone call got disconnected…she gave me her badge and left. That's over an hour after she was suspended, and that's the – it's that increase in insubordination that factored into our decision to terminate, was not only insubordination for the meeting, but over an hour for not leaving the workplace when suspended.

*Id.* at 10-12; R.R. 45a-47a.

The next day, September 14, 2018, Jabbour and two colleagues met with Claimant and formally suspended her pending an investigation into her "pattern of behavior." *Id.* at 13; R.R. 48a. After Claimant returned to work on September 24, 2018, Jabbour and Hoover terminated Claimant's employment for insubordination.

Jabbour testified that Claimant's personnel file included other examples of Claimant's lack of cooperation, which factored into the decision to terminate her employment. One such example was Claimant's submission of her evaluation three weeks after it was due. A second example concerned Claimant's complaint about a colleague. Jabbour requested a detailed account that he could forward to Human Resources. Claimant asked Jabbour "not to have Jeanne Hoover discuss the event with her." *Id.* at 14; R.R. 49a. Jabbour informed Claimant that Hoover would do

4

the investigation and asked if she wanted to proceed with the complaint. Claimant did not respond, which Jabbour thought was inappropriate behavior. A third example concerned Jabbour's request that employees use the employee badge reader next to the pharmacy entrance to clock in and out. Contrary to Jabbour's instruction, Claimant used other badge readers on three occasions during a two-week pay period.

On cross-examination, Jabbour conceded that the three above-described incidents were not the bases for Claimant's discharge, but they factored into Employer's decision. Jabbour explained that Employer's progressive discipline policy authorized immediate termination for insubordination. Jabbour also acknowledged that when he requested to meet with Claimant on September 13, 2018, she stated: "I'm more than happy to meet with you and have no problem meeting with you … I would like an unbiased third party there due to past interactions to make sure the meeting is kind, polite, and respectful." *Id.* at 30; R.R. 65a. Finally, Jabbour conceded that it was not unreasonable for an employee to discuss a suspension with Human Resources.

Employer presented the testimony of Jeanne Hoover. Hoover testified that on September 13, 2018, she told Jabbour that if Claimant refused to meet with him it would be considered insubordination. In the second phone call, Hoover advised Jabbour that if Claimant refused to meet with him, she should leave the premises. Hoover testified that after Claimant refused to leave Employer's premises at Jabbour's direction, Hoover and Claimant spoke on the phone for 45 minutes regarding the reason for Claimant's suspension. Claimant then left the premises. Hoover testified that she later called Claimant at home because she "felt badly that the phone – the conversation ended the way it did." *Id.* at 41; R.R. 76a. The two then spoke for another 20 minutes about the suspension.

5

Hoover acknowledged that Claimant had informed her that Claimant believed Jabbour to be biased against her. Hoover also acknowledged that it was not inappropriate for Claimant to request that another person from Human Resources attend her performance evaluation meeting and to postpone the meeting until that person could attend.

Claimant testified on her own behalf. She stated that she did not refuse to meet with Jabbour about her evaluation. She also denied refusing to leave on September 13, 2018; she simply requested an explanation for her suspension. Claimant testified that Jabbour did not inform her that her failure to leave immediately would itself be considered insubordination.

Claimant explained that she returned to Employer's premises on September 14, 2018, to meet with Jabbour and another department manager. She believed this was the meeting to discuss her performance evaluation. She testified that Jabbour had called her three times about the evaluation meeting, which she considered harassment. Claimant stated that she wanted to comply with Jabbour's directive.

Claimant testified that she did not violate any direct instructions from Jabbour or Employer. She stated that she was trying to preserve her dignity. Claimant explained that she had previously registered complaints about Jabbour with Hoover. She explained that during one incident, "I asked [Jabbour] if he was calling me stupid, and he said yes." *Id.* at 56; R.R. 91a. However, Hoover "deflected and dismissed" these complaints and told Claimant that it was just her perception. *Id.*; R.R. 91a. It was for these reasons that Claimant felt uncomfortable meeting with Jabbour and Hoover.

The Referee determined that Claimant was ineligible for benefits under Section 402(e) of the Law, 43 P.S. §802(e). The Referee explained that when an employee is discharged for failing to follow an employer's directive, there must be a determination of whether the directive is reasonable. The Referee found that it was reasonable for Employer to direct Claimant to meet with her supervisor and leave Employer's premises upon her refusal to do so. The Referee discredited Claimant's testimony that she did not refuse to comply with a directive and found that her conduct constituted insubordination. The Referee further found that Claimant failed to establish good cause for her insubordination. Finally, the Referee found that, when considered together with the other incidents cited by Employer in its decision to discharge Claimant, the two incidents on Claimant's last day of employment were "the last straw incidents" of insubordination. Referee Decision, 12/7/2018, at 3; R.R. 133a. Claimant appealed to the Board, arguing that the Referee's findings of fact were not supported by substantial evidence.

The Board reversed the Referee's decision. It acknowledged that it typically gives greater weight to an employer's testimony when it conflicts with a claimant's testimony. Nevertheless, it credited Claimant's testimony "that she did not refuse to meet with her supervisor about her performance evaluation, and appeared for the scheduled September 14, 2018 meeting," which she believed was about her evaluation. Board Adjudication, 3/5/2019, at 4; R.R. 145a.

The Board rejected Employer's assertion that Claimant was fired for a course of conduct, not just the two incidents of September 13, 2018. The Board concluded that the incidents described by Jabbour did not constitute insubordination. In fact, the Board stated that "[E]mployer's case is weakened by its piling on of past incidents to support its termination of [Claimant] for alleged insubordination." *Id.*

7

at 5; R.R. 146a. It stated that the "core" of Employer's case was Claimant's "alleged refusal to meet with her supervisor to discuss her performance evaluation, and her subsequent refusal to immediately leave the premises when informed she was suspended." *Id.*; R.R. 146a.

The Board acknowledged that an employee's refusal to meet with a supervisor about a performance evaluation could constitute willful misconduct. However, the Board found Jabbour's description of his conversations with Claimant to be unclear. Jabbour did not testify that Claimant expressly refused to meet with him. Rather, Jabbour's testimony was "clothed in broad terms," and he acknowledged that Claimant said "okay" when he told her it was a mandatory meeting. *Id.*; R.R. 146a. The Board found that Jabbour objected to Claimant's expressed desire for the attendance of a third party. Jabbour testified that Claimant "said I'm not refusing to meet, I just want someone else present. I said well, that's refusing to meet, but this is where we argue." *Id.*; R.R. 146a. The Board held that Claimant's "failure to abandon her concerns is not the equivalent of a refusal to attend the meeting." *Id.*; R.R. 146a.

Next, the Board determined that Claimant's questioning of her suspension on September 13, 2018, and request to call Human Resources did not demonstrate insubordination. Instead, the Board found Claimant's behavior in this regard to be reasonable. Even Jabbour agreed that Claimant's request to talk to a Human Resources representative was not unreasonable. The Board stated that this incident was "portrayed more as an ad[d]-on to the alleged refusal to meet about the performance evaluation." *Id.* at 6; R.R. 147a. The Board concluded that Claimant's conduct did not show insubordination. Further concluding that Employer did not

8

prove willful misconduct, the Board awarded benefits to Claimant. Employer now petitions for this Court's review.

On appeal,[3] Employer contends that the Board's factual findings are contrary to the record and its legal conclusions are erroneous. Employer argues that it properly suspended and terminated Claimant's employment because she violated its policy. It argues that the Referee correctly concluded that Claimant's refusal to meet with her supervisor and refusal to leave the premises constituted willful misconduct.[4]

The crux of Employer's argument is that the evidence of record supports the Referee's determination that Claimant committed willful misconduct, and the Board erred in holding otherwise. As noted, our scope of review requires us to determine whether the Board's decision is supported by substantial evidence, which is such relevant evidence that a reasonable mind might consider adequate to support a conclusion. *Peak v. Unemployment Compensation Board of Review*, 501 A.2d 1383, 1387 (Pa. 1985). This Court may not invade the fact-finding province of the Board. *Id.* at 1388. "The fact that [the e]mployer may have produced witnesses who gave a different version of the events, or that [the e]mployer might view the testimony differently than the Board, is not grounds for reversal if substantial evidence supports the Board's findings." *Tapco, Inc. v. Unemployment*

---

[3] Our review determines "whether constitutional rights were violated, [whether] an error of law was committed or whether necessary findings of fact are supported by substantial competent evidence." *Seton Company v. Unemployment Compensation Board of Review*, 663 A.2d 296, 298 n.2 (Pa. Cmwlth. 1995).

[4] The Board notified this Court that it would not be filing a brief in this matter because Claimant's brief adequately addresses the issues. As intervenor in this matter, Claimant asserts that the Board did not err in holding that she did not commit willful misconduct. She states that the Board is the ultimate fact-finder and its findings are supported by substantial evidence. Because it has exclusive authority to resolve conflicts in testimony, this Court must uphold its findings of fact, which are consistent with its conclusions of law.

*Compensation Board of Review*, 650 A.2d 1106, 1108-09 (Pa. Cmwlth. 1994). Similarly, even if evidence exists in the record that could support a contrary conclusion, it does not follow that the findings of fact are not supported by substantial evidence. *Johnson v. Unemployment Compensation Board of Review*, 504 A.2d 989, 990 (Pa. Cmwlth. 1986).

Employer first focuses on Claimant's request for the presence of a third party at the performance evaluation meeting. Employer argues that "Claimant's actions in refusing to meet with [Jabbour] unless her demand to have another individual of her choosing present during the meeting demonstrated a 'disregard of the standards of behavior that an employer can rightfully expect from an employee.'" Employer Brief at 17. The Board agreed that an employee's refusal to meet with a supervisor may constitute willful misconduct. However, the Board found the evidence did not show that Claimant refused to meet with Jabbour. Further, the Board set forth its reasons for reversing the Referee's factual findings. The Board credited Claimant's testimony that she did not refuse to meet with Jabbour about her performance evaluation and appeared for the scheduled September 14, 2018, meeting prepared to discuss the evaluation. The Board noted that Jabbour never testified that Claimant affirmatively said she would not meet with him. Further, he testified that Claimant responded "okay" when he advised her that she could not have a third party present at the meeting.

Employer also argues that the Board erred in determining that Claimant's "actions in initially questioning her supervisor's attempt to suspend her and asking to call [Human Resources]" did not rise to the level of misconduct. Employer Brief at 23. Employer contends that Claimant's refusal to immediately

10

leave the hospital, after being informed of her suspension, constituted insubordination.

The Board's findings about Claimant's questioning of her suspension are supported by substantial evidence. The Board held that it was reasonable for Claimant to question her supervisor about her suspension. Claimant's conversation with Hoover lasted 45 minutes, which accounted for most of the hour that Jabbour said it took Claimant to leave the premises. The Board found that Employer's complaint about Claimant's refusal to leave the premises was "an ad[d]-on to the alleged refusal to meet about the performance evaluation." Board Adjudication, 3/5/2019, at 6; R.R. 147a. Jabbour acknowledged as much when he testified that Claimant's delay in leaving was an "increase in insubordination" that factored into Employer's decision to discharge her. N.T. 12; R.R. 47a. The Board concluded that Claimant's request to speak to Human Resources, upon being informed of a suspension, did not constitute insubordination or willful misconduct.

In short, Employer requests this Court to accept Employer's narrative, reject Claimant's credited testimony and, upon these findings, reverse the Board. This Court is not permitted to do so. The Board's factual findings and credibility determinations are supported by substantial evidence. Accordingly, we affirm the Board's order.

MARY HANNAH LEAVITT, President Judge

Judge Fizzano Cannon did not participate in the decision in this case.

11

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lehigh Valley Hospital,                    :
                    Petitioner             :
                                           :
            v.                             :    No. 398 C.D. 2019
                                           :
Unemployment Compensation                  :
Board of Review,                           :
                    Respondent             :

# **O R D E R**

AND NOW, this 23rd day of January, 2020, the order of the Unemployment Compensation Board of Review dated March 5, 2019, in the above-captioned matter is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge