IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Julianna Rusecky,                              :
                            Petitioner         :
            v.                                 :     No. 169 C.D. 2019
                                               :     Argued: June 8, 2020
Unemployment Compensation                      :
Board of Review,                               :
                            Respondent         :

BEFORE:     HONORABLE MARY HANNAH LEAVITT, President Judge
            HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE ANNE E. COVEY, Judge

OPINION
BY PRESIDENT JUDGE LEAVITT                              FILED: July 7, 2020

            Julianna Rusecky (Claimant) petitions for review of an adjudication of
the Unemployment Compensation Board of Review (Board) finding her ineligible
for benefits under Section 402(e) of the Unemployment Compensation Law (Law),
43 P.S. §802(e).[1]  The Board found that Claimant, a childcare worker, was
dismissed for not adequately checking a stroller that contained a sleeping child and
that this conduct constituted willful misconduct.  On appeal, Claimant argues that
the Board erred because her conduct constituted mere negligence.  Claimant
further argues that there was no evidence that she deliberately violated an
employment rule.

            Claimant worked full-time for Right Steps of Rittenhouse Square
(Employer), a boutique preschool and childcare center, as an Assistant Group
Supervisor.  She was dismissed on August 22, 2018.  Claimant filed a claim for
unemployment compensation benefits, which the Unemployment Compensation

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e).

(UC) Service Center denied.  Claimant appealed, and the Referee held a hearing on October 24, 2018.

Employer presented the testimony of Koren Clark, Site Director. Clark explained that she discharged Claimant and another teacher for leaving a child unattended for approximately 20 minutes.  Employer's handbook requires employees to focus their attention on the children.  It states as follows:

> Focused Attention and Observation of Children: At all times, including while interacting with individual children—*watching, counting, and listening for sounds or the absence of sounds that raise concern*.  Teachers/caregivers limit adult-adult socializing to break times or when they have made arrangements to delegate supervision of children to another teacher/caregiver. They do not talk on cell phones or use text messages or other forms of social media while supervising children, except to summon help in an emergency.

Certified Record (C.R.) Item No. 3 at Service Center Exhibit 15 (emphasis added). Employer's handbook states that an employee can be discharged for violating the active supervision policy.  Clark testified that the Department of Human Services requires "children under the age of three to be within sight and sound at all times of teachers who are responsible for supervision of the classroom or large group." Notes of Testimony, 10/24/2018, at 14 (N.T. __); C.R. Item No. 9.[2]  In a classroom of one-year-olds, each teacher is assigned five children.

---

[2] Section 3270.113(a)(1) of the Department of Human Services' regulations reads:

> (a) Children on the facility premises and on facility excursions off the premises shall be supervised by a staff person at all times. Outdoor play space used by the facility is considered part of the facility premises.
>
> > (1) Each staff person shall be assigned the responsibility for supervision of specific children.  The staff person shall know the names and whereabouts of the children in his assigned group. The staff person shall be physically present with the children in his

Clark recounted that shortly after Claimant began her employment, she received a warning for not following the above-quoted active supervision policy. As a result, Claimant was required to undergo two hours of special training, which consisted of watching videos on safety recognition and supervision skills. Clark described Employer's child supervision policy as follows:

> [S]taff are responsible for all the children in their care at the time. When supervising a group of children, you are not only responsible to the individual children assigned to you but the entire group. That way [] there are several eyes on children at all times. When entering – transitioning from one area of the building or in and out of the building, *staff are to sweep the area, make sure that there are no children hiding, make sure that they're counting their children* and that they're communicating as a group where children are and what is happening.

N.T. 10 (emphasis added).

Clark then detailed the incident for which Claimant was discharged. Clark explained that Employer uses buggies, or extended strollers, to transport children. The strollers have three rows of two seats and are kept in a hallway connected to the first floor playroom. On August 22, 2018, a teacher from Claimant's classroom informed Clark that they were missing a child after their morning buggy ride. Clark immediately went to the "buggy area," where she discovered the missing child asleep "in the last buggy that was parked[.]" N.T. 11. She brought the child to the classroom and asked the four teachers, including Claimant, to write statements about the incident. Claimant's statement read "I

---

group on the facility premises and on facility excursions off the facility premises.

55 Pa. Code §3270.113(a)(1).

3

unfastened the kids in my group from the stroller. I proceeded to head up the elevator with five children." C.R. Item No. 9 at Exhibit 5.

Clark reviewed the building's camera footage to determine what happened. She testified as follows:

> [Clark]: There were four teachers with the group. I saw a teacher having a conversation with [Claimant]. [Claimant] was looking at the buggy at the time, like I said it was about three feet away. In the buggy it was clear that there were still two children in the buggy. One was in the left middle seat and one was in the right rear seat.
>
> [Employer Tax Consultant Representative (ET)]: Could you see the children on the video when you reviewed [it]?
>
> [Clark]: Yes I could.
>
> [ET]: Well what happened to the first teacher after you saw her talking with [Claimant?]
>
> [Clark]: She exited the room.
>
> [ET]: And who remained there after the teacher exited the room?
>
> [Clark]: [Claimant] and another employee.
>
> [ET]: What happened to the next employee?
>
> [Clark]: That employee stepped in to the bathroom.
>
> [ET]: And so what happened then? What did you observe on the video with regard to [Claimant] then being alone in the – with the stroller?
>
> [Clark]: [Claimant] approached the stroller, she walked around the other side of the stroller, removed the child in the middle and then pushed the buggy back in to the hallway corner with the sleeping child.

4

N.T. 12-13.

Clark acknowledged that at no point did Claimant state that she was aware of the child in the buggy. The unattended child was one of five assigned to another teacher, who was also discharged. Clark explained that the two teachers were discharged because

> the group contained 19 children. Each staff member, in order to transition children safely are assigned a partner. The other two staff transferred their primary group. The remaining two staff [Claimant] and [the other teacher] failed to count the children that they were left with [and] responsible for and *failed to do a sweep of the area appropriately*.

N.T. 14 (emphasis added).

Claimant testified on her own behalf. She explained that on the day in question, she and three other teachers had taken a group of children for a walk outside in the strollers. When they returned, she took her five assigned children out of the stroller and put the strollers away. Claimant stated that she did a quick sweep of the strollers but did not see the sleeping child, who had been sleeping on his side.

Claimant testified that a teacher is responsible for the five children assigned to her and maintaining the required five-to-one ratio. Claimant further explained that on the day in question,

> [t]he other teacher did go to the bathroom and leave me with nine children and when she came out, we proceeded to go upstairs to the classroom on the elevator. We counted our children. Whether she came down with nine or not, I assume she came down with nine, but I had my five. The child that was left behind was not in my group and we went upstairs and proceeded to have lunch. About 10 minutes went by before any of us four teachers noticed this child was gone.

5

N.T. 16. Claimant stated that she "had no idea" that a child had been left behind in the stroller because she had counted her five children. *Id*. When pressed by the Referee about how she could have missed the child, Claimant said it was a mistake. Claimant explained:

> [T]o see on the paper willful misconduct, to me, my definition of that is that I willingly did this on purpose, which I did not. I would not harm a child. There may be another definition for that, but it was not willingly done. It was a mistake and I feel terrible about it.

*Id*.

The Referee affirmed the UC Service Center's decision, holding that Claimant was ineligible for benefits by reason of willful misconduct. The Referee found that Claimant's failure to check the buggy where the child was sleeping and her failure to sweep the area and count all the children constituted a disregard of Employer's active supervision policy. Claimant appealed to the Board, arguing that Employer failed to establish that she intentionally and deliberately violated its active supervision policy.

The Board affirmed the Referee's decision but modified one finding of fact to read that "[C]laimant had failed to *adequately check* the stroller in which the child was sleeping according to [E]mployer's policies and procedures." Board Adjudication, 1/14/2019, at 1; C.R. Item No. 14. The Board also found that Claimant did make a quick sweep of the strollers before pushing them to the storage area in the hallway. Nevertheless, the Board found Claimant ineligible for benefits. The Board explained that an act of negligence is not ordinarily found to be willful misconduct but "where an employer establishes that an employee's

6

inadvertent conduct displays a disregard of a known rule, willful misconduct may be found." *Id.* at 2. It reasoned that

> [C]laimant knew [E]mployer's policies and procedures direct that she is responsible for all of the children and require that she physically check the strollers to ensure no child is left behind. [C]laimant was previously warned for leaving a child unsupervised and was given additional training in supervising children. On the day of the final incident, [C]laimant admits that she made only a quick sweep of the strollers before pushing them down a narrow hallway, resulting in a sleeping child being left in the stroller unsupervised for at least twenty (20) minutes.

*Id.* Claimant petitioned for this Court's review.

On appeal,[3] Claimant argues that the Board erred in holding that she was ineligible for benefits under Section 402(e) of the Law. She argues that accidentally leaving a sleeping child in a stroller does not constitute willful misconduct, particularly when that child is assigned to another teacher. She contends that Employer's evidence did not establish a deliberate and intentional violation of its child supervision policy.

We begin with the law on willful misconduct. Section 402(e) of the Law provides:

> An employe shall be ineligible for compensation for any week--
>
> * * *
>
> (e) In which his unemployment is due to his discharge or temporary suspension from work for willful misconduct

---

[3] Our review determines "whether constitutional rights were violated, [whether] an error of law was committed or whether necessary findings of fact are supported by substantial competent evidence." *Seton Company v. Unemployment Compensation Board of Review*, 663 A.2d 296, 298 n.2 (Pa. Cmwlth. 1995).

7

connected with his work, irrespective of whether or not such work is "employment" as defined in this act[.]

43 P.S. §802(e). This Court has explained that

> [t]here are four categories of activity that can constitute willful misconduct: (1) the wanton or willful disregard of the employer's interests; (2) the deliberate violation of the employer's rules; (3) the disregard of the standards of behavior which an employer can rightfully expect from an employee; and (4) negligence demonstrating an intentional disregard of the employer's interests or the employee's duties and obligations to the employer.

*Kelly v. Unemployment Compensation Board of Review*, 747 A.2d 436, 439 (Pa. Cmwlth. 2000). Whether the conduct for which an employee has been discharged constitutes willful misconduct is a question of law. *Id.* at 438. Where the employer proves willful misconduct, it then becomes the claimant's burden to prove that he had good cause, *i.e.*, his actions were justified and reasonable under the circumstances. *Id.* at 438-39.

An employer cannot prove willful misconduct by "merely showing that an employee committed a negligent act, but instead must present evidence indicating that the conduct was of an intentional and deliberate nature." *Myers v. Unemployment Compensation Board of Review,* 625 A.2d 622, 625 (Pa. 1993) (quoting *Bucher v. Unemployment Compensation Board of Review*, 463 A.2d 1241, 1243 (Pa. Cmwlth. 1983)). Where the employee's negligence "is of such a degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer," the negligent act can constitute willful misconduct. *Id.* (quoting *Coleman v. Unemployment Compensation Board of Review*, 407 A.2d 130, 131-32 (Pa. Cmwlth. 1979)).

8

Our Supreme Court expanded on these principles in *Navickas v. Unemployment Compensation Board of Review*, 787 A.2d 284 (Pa. 2001). There, the claimant was hired by a hospital shortly after graduating from nursing school. After the claimant committed an error in patient care, the hospital placed the claimant under the supervision of a nurse preceptor for five weeks. Shortly after completing this supervision, the claimant administered an antibiotic that had not been properly diluted. The employer's policy required nurses to consult a medication reference book if they had a question about a dilution ratio. The claimant explained that she glanced at the book, but did not read it carefully because she had previously administered the drug and thought she knew the proper ratio.

The Board reversed the referee's award of benefits, and this Court affirmed the Board. The Supreme Court reversed and reinstated the referee's decision, holding that the claimant did not act with intentional disregard of the employer's interest or its rules. Rather, by merely glancing at the reference book before diluting the medication, the claimant acted with negligence. The Supreme Court held that the disregard of the employer's interests must be intentional in order to disqualify an employee for unemployment benefits.

In *Grieb v. Unemployment Compensation Board of Review*, 827 A.2d 422 (Pa. 2003), the claimant, a school employee, was dismissed after she came to the school with several guns in her car. The claimant had loaded her car with personal belongings to be moved into her new home; these included books, lamps, clothing and three unloaded shotguns. Because it was raining when she arrived at her new home, she decided to defer the unpacking to the next morning. However, at 6:00 a.m. the next morning, the school district called the claimant to fill in for

9

another teacher because of an emergency. The claimant, whose regular start time was 12:00 p.m., agreed and went to the school. Forgetting about the unloaded shotguns, the claimant parked her car in the staff member-only lot and locked it. A staff member noticed the weapons and alerted the school administration, which suspended claimant without pay. The referee and the Board held that she was ineligible for benefits under Section 402(e) of the Law, and this Court affirmed.

In reversing, the Supreme Court held that the evidence did not establish that the claimant acted in disregard of the school district's interests. It concluded that her actions were merely negligent and neither intentional nor deliberate. It held that the claimant's unintentional violation of school policy did not rise to the level of willful misconduct.

Claimant argues that *Navickas* and *Grieb* govern the outcome of her appeal. Claimant attempted to comply with Employer's policy. She checked over the strollers, but she did not see the sleeping child in spite of this check. The Board did not make a finding that Claimant intentionally violated Employer's active supervision policy. Instead, the Board found that Claimant "had failed to *adequately* check" the strollers where the child was sleeping and "made a *quick sweep*" of the strollers. Board Adjudication, 1/14/2019, at 1; C.R. Item No. 14 (emphasis added). Without a finding by the Board that Claimant deliberately and intentionally violated the active supervision policy, Claimant argues that her conduct did not constitute willful misconduct.

The Board responds that "Employer requires that a teacher actively supervise the children and [to] physically check the strollers, which is why Claimant's quick sweep of the strollers did not comply with [Employer's] rule." Board Brief at 13. It argues that the cases cited by Claimant are inapposite because

10

those cases did not involve an employer's rules. The Board argues that Claimant's conduct cannot "be described as negligent." *Id.* at 14. We disagree.

First, the Board's findings do not show that Claimant refused to follow the active supervision policy. It found that Claimant did sweep the room, as required by the policy, but did so quickly. The Board also found that Claimant checked the stroller that held the sleeping child but did not do so "adequately." Board Adjudication, 1/14/2019, at 1; C.R. Item No. 14. These findings show poor performance, which constitutes negligence, not willful misconduct.

Second, there is no support for the Board's assumption that Employer's active supervision policy required every teacher to "physically check" every stroller at the conclusion of an outing. If this was the case, all four teachers that participated in the outing should have been fired. Nevertheless, the evidence showed that Claimant did a "physical check." Employer's own witness, Clark, testified that Claimant approached the stroller, walked around the other side of the stroller, removed the child in the middle row of seats, and then pushed the stroller with the sleeping child into the corner. N.T. 13. Clark described physical interaction with the stroller.

Employer's active supervision policy makes no mention of a "physical check," of strollers, and Clark did not testify that the policy required this measure. The concept appears to have been introduced by the Referee, as the following exchange demonstrates:

> [Referee]:   Yeah but then when you were putting them away, did you physically go and see what's inside the buggies because a child is small, they could have…
>
> [Claimant]:   I took a quick sweep. I did not see a child.
>
> [Referee]:   You did not see the child sleeping?

11

[Claimant]: He must have been passed over to the side.

[Referee]: So all the more reason when children are along, do you physically make sure that the child is not in the buggy?

[Claimant]: Yes.

[Referee]: Or are you just [glancing to] make sure that okay, nobody is there, let me go on.

[Claimant]: We're supposed to physically make sure none of them are in there.

[Referee]: So you didn't do that, ma'am.

[Claimant]: Say again.

[Referee]: Did you do that?

[Claimant]: I checked the buggies. I did not see this child there, sleeping.

*Id.* at 17. The handbook says nothing about "physically checking" the strollers. However, we agree with Claimant that the testimony of both Clark and Claimant shows that Claimant did a physical check of the stroller.

We conclude that as in *Navickas* and *Grieb*, the evidence did not establish that Claimant acted with deliberate and intentional disregard of Employer's policy or interests. Simply, Employer did not meet its burden of proving willful misconduct. Accordingly, we reverse the decision of the Board and remand for the computation of benefits owed to Claimant.

_____
MARY HANNAH LEAVITT, President Judge

12

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Julianna Rusecky,                           :
                    Petitioner              :
          v.                                :     No. 169 C.D. 2020
                                            :
Unemployment Compensation                   :
Board of Review,                            :
                    Respondent              :

# **O R D E R**

AND NOW, this 7th day of July, 2020, the order of the Unemployment Compensation Board of Review in the above-captioned matter, dated January 14, 2019, is hereby REVERSED, and the matter is REMANDED to the Board for a computation of benefits.

Jurisdiction relinquished.

_____
MARY HANNAH LEAVITT, President Judge